[No. 7904. Department Two. September 29, 1909.]

THE STATE OF WASHINGTON, *Appellant,* v. M. J. SWAN, *Respondent.*[1]

FALSE PRETENSES—OBTAINING MONEY FOR CHARITY. Obtaining a donation of money as a charity under false representations is within Bal. Code, § 7165, making it an offense to obtain money under false pretenses; the act being within the spirit and intent of the law, which makes no exception.

CRIMINAL LAW—DEFENSES—CRIMES UNDER VARIOUS ACTS. It is no defense to a prosecution for obtaining a donation of money by false pretenses, in violation of Bal. Code, § 7165, that the same act is punishable under the vagrancy act, *id.,* § 6724.

[1]Reported in 104 Pac. 145.

Appeal from a judgment of the superior court for Kittitas county, Kauffman, J., entered April 27, 1908, upon sustaining a demurrer to the information, dismissing a prosecution for the crime of obtaining money under false pretenses. Reversed.

*C. R. Hovey* and *H. W. Hale,* for appellant.

CROW, J.—Defendant was charged, under Bal. Code, § 7165 (P. C. § 1662), with the crime of obtaining money under false pretenses. The charging part of the information is as follows:

"He, the said M. J. Swan, did in the county of Kittitas and state of Washington, on or about the fifteenth day of January one thousand nine hundred and eight, unlawfully, feloniously, falsely, fraudulently, and designedly and with intent to defraud R. L. McDonald, obtain from said R. L. McDonald a sum of money, to wit, fifty cents, lawful money of the United States of America, the property of the said R. L. McDonald, by then and there unlawfully, wilfully, feloniously, fraudulently and designedly pretending to said R. L. McDonald that he, the said M. J. Swan and his wife and children were on their way to Iowa and had lost a horse needed by him to convey them thither and that he was without means to obtain another horse; he, the said defendant, making said statements and representations as an appeal for aid; whereas in truth and in fact the said defendant had not suffered the loss of any horse as he the said M. J. Swan well knew; that by means of said false pretenses and representations the said R. L. McDonald delivered to the said M. J. Swan the sum of money aforesaid."

To this information a demurrer was sustained by the trial court, and the state has appealed.

No brief has been filed by respondent, but from appellant's brief it is made to appear that it was the theory of the trial court that if one obtained money from another as a charity, although the inducement was a false representation, he could not be charged with the crime of obtaining money by false

.pretenses.  Reference to the section of the code under which the charge against respondent is made will disclose the fact that there is no limitation or exception made in favor of the one who by any false pretense obtains a thing of value from another.  The only question in the case—if, indeed, it may be called a question—is whether the act charged is a false pretense within the meaning of the law.  There is nothing in the act before us to indicate that it was not within the intent of the law to punish a false pretense of poverty and want, nor is it made to appear that the act charged is not within the spirit of the law.  It is only when the act is clearly at variance with the legislative intent, or when, although within the letter, it would do violence to the spirit of the law, or violate some constitutional right, that courts are warranted in writing exceptions to a general statute, for it must be admitted that it is within the power of the legislature to define as a crime any actionable wrong.

Upon principle, also, it would seem that the act charged is a false pretense within the meaning of the law.  By it respondent obtained that which was the property of another. Had he appealed to the cupidity, avarice, or business judgment of the complaining witness he would have been guilty of the crime charged.  Then, why is he not likewise guilty if he has appealed to the charitable impulses of his victim? The same object has been obtained.  He has obtained the property of another.  Mr. Bishop has defined a false pretense as "such a fraudulent representation of an existing fact or a past fact by one who knows it not to be true as is adapted to induce the person to whom it is made to part with something of value."  Bishop, New Crim. Law, § 415.  In 12 Am. & Eng. Ency. Law (2d ed.), p. 845, the following definition will be found:

"A false representation made by a person as to his own or another's necessitous condition, by means of which gifts of money or property are obtained in charity, is a false pretense."

This court, in the case of *State v. Phelps*, 41 Wash. 470, 84 Pac. 24, has said that any pretense which deceives the person defrauded is sufficient to sustain an indictment or information.

The exact question now before us, as well as the case (*People v. Clough*, 17 Wend. 351, 31 Am. Dec. 303) upon which the trial judge seems to have rested his opinion, was considered by the supreme court of Wisconsin in the case of *Baker v. State*, 120 Wis. 135, 97 N. W. 566. Answering the contention that the statute had no application to the act of inducing, by fraudulent representation of a fact, a donation of money as a charity, the court said:

"This contention has support from *People v. Clough*, 17 Wend. 351, 31 Am. Dec. 303, which seems not to have been questioned or expressly reaffirmed on this point in New York. The conclusion was reached in that case on the strength of the recitation which preceded the English statute (30 Geo. II, c. 24) which was the prototype of most of the statutes in this country; the latter, however, not retaining the preamble. That preamble recited as the wrong to be reached by the statute the obtaining by evil-disposed persons of divers sums of money or merchandise, 'to the great injury of industrious families and to the manifest prejudice of trade and credit.' From this the New York court argued that such trifling sums as people were ever induced to give to mendicants or for charity were not likely to cause great injury to industrious families, or to prejudice trade and credit. The English courts, in construing their own statute, have never so limited it. *Reg. v. Hensler*, 11 Cox Cr. Ca. 570; *Reg. v. Jones*, Temp. & M. 270. Nor has any other court, so far as we, or apparently the counsel, have ascertained, adopted the view of the New York court, which has been repudiated by many of them. *Com. v. Whitcomb*, 107 Mass. 486; *State v. Matthews*, 91 N. C. 635; *Strong v. State*, 86 Ind. 208, 44 Am. Rep. 292; *State v. Styner*, 154 Ind. 131, 56 N. E. 98; 2 Wharton's Cr. Law, § 1153; Bishop's Cr. Law, § 467."

The doctrine in *People v. Clough* was never reaffirmed in the state of New York, and its rule was distinctly repudiated by the statute of 1851. In a dissenting opinion rendered in

the case of *McCord v. People*, 46 N. Y. 470, Justice Peckham says of the *Clough* case:

"The supreme court of this state, I say it with great respect, once put an exception in our statute not placed there by the legislature; that a false pretense, whereby charity was obtained, was not within the meaning of the statute, though plainly within its language. It seems to be settled the other way in *England R. v. Jones* (T. & M. 270). . . . The recital preceding the English statute that evil disposed persons had obtained goods by false pretenses, 'to the great injury of industrious families, and to the manifest prejudice of trade and credit,' was referred to as showing that only trade and commerce were sought to be protected, and their invasion only were within the denunciation or penalty of the act, though this recital was never adopted here. . . . This made it necessary for the legislature to strike this exception out again, and they did so by an act passed in 1851. (Laws of 1851, p. 268.) Now the act in terms applied to all, the virtuous and the vicious, to 'industrious,' and to idle families alike."

The common law covered only those frauds which were perpetrated by the use of a false token or writing, or effectuated through the instrumentality of a conspiracy to cheat or defraud. It was the intent and object of the statute, therefore, to embrace all false pretenses, whether of act, word, or deed, and this comprehends any verbal pretense or representation, fraudulently uttered, sufficient to induce another to part with his property. It will thus be seen that the *Clough* case is not supported by either reason or authority.

It is said in appellant's brief that the trial judge was further induced to hold the information bad because the acts charged had been defined in the vagrancy statute, Bal. Code, § 6724 (P. C. § 1889). With this conclusion we are unable to agree; but if it were so, it would not follow that respondent could not be charged as he is. A person might be answerable under one of two statutes. The only consequence would be that conviction under the one would be a bar to prosecution under the other.

"It is no defense to an indictment under one statute that a defendant might also be punished under another." *In re Converse*, 137 U. S. 624, 11 Sup. Ct. 191, 34 L. Ed. 796.

For the reasons herein assigned, the judgment of the lower court is reversed, and this cause remanded with instructions to overrule the demurrer and to hear and determine the facts charged in the information.

RUDKIN, C. J., PARKER, DUNBAR, and MOUNT, JJ., concur.