129 P.3d 1173

**STATE of Hawai'i, Plaintiff–Appellee,**

**v.**

**Hee Sung YOO, Defendant–Appellant.**

**No. 26567.**

Intermediate Court of Appeals of Hawai'i.

Feb. 13, 2006.

146

Phyllis J. Hironaka, Deputy Public Defender, on the briefs, for Defendant–Appellant.

James M. Anderson, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for Plaintiff–Appellee.

LIM, Acting C.J., FOLEY and NAKAMURA, JJ.

Opinion of the Court by LIM, J.

Hee Sung Yoo, aka John (Defendant or Yoo), appeals the April 14, 2004 judgment of the Circuit Court of the First Circuit (circuit court) [1] that convicted him, upon a jury's verdicts and as charged, of assault in the first degree (Count II),[2] criminal property damage in the second degree (Count III), and assault in the second degree (Count IV).[3]

---

1. The Honorable Michael D. Wilson presided.

2. Hawaii Revised Statutes (HRS) § 707–710(1) (1993) provides: "A person commits the offense of assault in the first degree if the person intentionally or knowingly causes serious bodily injury to another person." HRS § 707–700 (1993) defines "serious bodily injury" as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." HRS § 707–700 defines "bodily injury" as "physical pain, illness, or any impairment of physical condition." *Assault in the first degree is a class B felony.* HRS § 707–710(2) (1993).

3. HRS § 707–711(1) (1993) reads, in relevant part:

 (1) A person commits the offense of assault in the second degree if:
 (a) The person intentionally or knowingly causes substantial bodily injury to another;
 (b) The person recklessly causes serious bodily injury to another person;
 . . .
 (d) The person intentionally or knowingly causes bodily injury to another person with a dangerous instrument[.]

 HRS § 707–700 (Supp.2004) provides, in pertinent part:

 "Substantial bodily injury" means bodily injury which causes:

On appeal, Defendant brings various plain error complaints about the jury instructions propounded in this case. He also contends the State committed a *Modica* violation[4] in Count II by charging him with assault in the first degree instead of assault in the second degree. We affirm.

## I. Background.

The indictment charged Defendant with robbery in the first degree (Count I—complainant In Song Kim (Kim)),[5] assault in the first degree (Count II—complainant Kim), criminal property damage in the second degree (Count III—complainant Kim),[6] and assault in the second degree (Count IV—complainant Jung Hee Han (Han)).

The charges arose out of the baseball bat beatings of Kim and Han on Kapiʻolani Boulevard fronting Backseat Betty's Love Boutique, stemming from a battle between rival factions for hegemony over gambling house operations in the area. Kim testified that during the beating, Defendant stole his fanny pack, which contained $4,800 in cash. Kim also saw Defendant and his cohorts bashing Kim's SUV. Han related that Defendant chased him across the street to the parking lot of the Blue Tropix Nightclub, where Defendant bludgeoned him numerous times.

Chet Aaron Morrison, M.D. (Dr. Morrison), a general and trauma surgeon, testified that he treated Kim in the emergency room. Kim was injured badly enough to require a trauma doctor in addition to the emergency room physician:

> He had a number of injuries. He had what I thought was a mild concussion. He had multiple bruises around the face, arms and legs. Most strikingly, he had fractures on both legs, he had broken bones.

> On the left side he had a bone that was severely broken and, in fact, protruded through the skin, this is what we call an open fracture. On the right side he also had ankle and foot fractures, which were not open, but were severe.... He had a— he had a nasal fracture as well.

(Format modified.) Kim required "a couple of surgeries for his legs. The kinda fractures that they have really need to be corrected by an orthopedic surgeon." Kim stayed in the hospital "well over a week." Dr. Morrison filled out a form indicating that Kim had suffered "substantial bodily injury"; in other words, the broken legs and the broken nose. Dr. Morrison also indicated that Kim had sustained "serious bodily injury," because Kim was not expected to regain normal function of his legs for six months to a year.

Robert Ruggieri, M.D. (Dr. Ruggieri), a specialist in emergency medicine, testified that he treated Han in the emergency room. Han had a lengthy laceration on the top of his head. Dr. Ruggieri did not remember, but surmised that the ten-centimeter laceration would have required twelve-to-fifteen staples. Dr. Ruggieri filled out a form indicating that the injury was a major avulsion, laceration or penetration of the skin.

All of the jury instructions the circuit court promulgated were given by agreement of the parties. The following instructions covered the charge of assault in the first degree in Count II:

> In count II of the Indictment, The Defendant, Hee Sung Yoo, also known as John, is charged with the offense of Assault in the First Degree.

> A person commits the offense of Assault in the First Degree if he intentionally or

---

(1) A major avulsion, laceration, or penetration of the skin;
(2) A burn of at least second degree severity;
(3) A bone fracture;
(4) A serious concussion; or
(5) A tearing, rupture, or corrosive damage to the esophagus, viscera, or other internal organs.
Assault in the second degree is a class C felony. HRS § 707–711(2) (1993).

**4.** *See State v. Modica*, 58 Haw. 249, 250–52, 567 P.2d 420, 421–22 (1977).

**5.** The jury found Hee Sung Yoo, aka John (Defendant), not guilty of robbery in the first degree in Count I, and he was acquitted of that charge.

**6.** Defendant makes no complaint on appeal about his conviction of the charge of criminal property damage in the second degree in Count III, so we will affirm that conviction as a matter of course.

knowingly causes serious bodily injury to another person.

There are two material elements of the offense of Assault in the First Degree, each of which the prosecution must prove beyond a reasonable doubt.

These two elements are:

1. That, on or about August 3rd, 2003 in the City and County of Honolulu, State of Hawaii, the Defendant, Hee Sung Yoo, also known as John, caused serious bodily injury to another person, In Song Kim; and

2. That the Defendant, Hee Sung Yoo, also known as John, did so intentionally or knowingly.

The circuit court instructed the jury on the charge of assault in the second degree in Count IV, as follows:

In Count IV of the Indictment, the Defendant, Hee Sung Yoo, also known as John, is charged with the offense of Assault in the Second Degree.

This offense is being charged and can proved [sic] by the prosecution in either of two ways. With respect to the first alternative, a person commits the offense of Assault in the Second Degree, if he intentionally or knowingly causes substantial bodily injury to another person.

In the first alternative, there are two material elements of Assault in the Second Degree, each of which the prosecution must prove beyond a reasonable doubt.

These two elements are:

1. That on or about August 3rd, 2003, in the City and County of Honolulu, State of Hawaii, the Defendant, Hee Sung Yoo, also known as John, caused substantial bodily injury to Jung Hee Han; and

2. That the defendant, Hee Sung Yoo, also known as John, did so intentionally or knowingly.

With respect to the second alternative, a person commits the offense of Assault in the Second Degree, if he intentionally or knowingly causes bodily injury to another person with a dangerous instrument.

In the second alternative, there are three material elements of Assault in the Second Degree, each of which the prosecution must prove beyond a reasonable doubt.

These three elements are:

1. That on or about August 3rd, 2003, in the City and County of Honolulu, State of Hawaii, the Defendant, Hee Sung Yoo, also known as John, caused bodily injury to Jung Hee Han; and

2. That the Defendant, Hee Sung Yoo, also known as John did so with a dangerous instrument; and

3. That the Defendant, Hee Sung Yoo, also known as John did so intentionally or knowingly.

In Count IV, the Defendant, Hee Sung Yoo, also known as John, is charged with one offense allegedly committed two different ways. Put differently, Count IV of the indictment charges alternative method of proving the single offense of Assault in the Second Degree. Each alternative and the evidence that applies thereto are to be considered separately. The fact that you may find the Defendant, Hee Sung Yoo, also known as John not guilty or guilty of one of the alternatives does not mean that you must reach the same decision with respect to the other alternative.

Towards the end of the jury instructions, the circuit court enlightened the jurors on the unanimity prerequisite to the return of any verdict:

A verdict must represent the considered judgment of each juror, and in order to reach a verdict, it is necessary that each juror agree thereto. In other words, your verdict must be unanimous.

The circuit court then instructed the jurors regarding permissible verdicts, including the following in Counts II and IV:

As to Count II, Assault in the First Degree, you may bring in either one of the following verdicts:

1. Not guilty; or

2. Guilty as charged.

Your verdict must be unanimous.

. . . .

As to Count IV, Assault in the Second Degree, you may bring in either one of the following verdicts:

1. Not guilty; or
2. Guilty as charged.

Your verdict must be unanimous.

Several pages later, the circuit court instructed the jury on the offense of assault in the second degree included in Count II:

If and only if you find the Defendant, Hee Sung Yoo, also known as John, not guilty of Assault in the First Degree, or you are unable to reach a unanimous verdict as to this offense, then you must consider whether the defendant, Hee Sung Yoo, also known as John, is guilty of the included offense of Assault in the Second Degree.

This offense is being charged and can proved [sic] by the prosecution in either of two ways. With respect to the first alternative, a person commits the offense of Assault in the Second Degree, if he intentionally or knowingly causes substantial bodily injury to another person.

In the first alternative, there are two material elements of Assault in the Second Degree, each of which the prosecution must prove beyond a reasonable doubt.

These two elements are:

1. That on or about August 3rd, 2003, in the City and County of Honolulu, State of Hawaii, the Defendant, Hee Sung Yoo, also known as John, caused substantial bodily injury to In Song Kim; and
2. That the defendant, Hee Sung Yoo, also known as John, did so intentionally or knowingly.

With respect to the second alternative, a person commits the offense of Assault in the Second Degree, if he recklessly causes serious bodily injury to another person.

In the second alternative, there are two material elements of Assault in the Second Degree, each of which the prosecution must prove beyond a reasonable doubt.

These two elements are:

1. That on or about August 3rd, 2003, in the City and County of Honolulu, State of Hawaii, the Defendant, Hee Sung Yoo, also known as John, caused bodily injury to In Song Kim; and
2. That the Defendant, Hee Sung Yoo, also known as John did so recklessly.

At this point, the deputy prosecuting attorney (DPA) alerted the circuit court that it had omitted the word "serious" in element one of alternative two. Accordingly, the circuit court informed the jury:

Members of the jury, please turn to page 47 and look at the section of the instruction that lists the two elements. You'll see the two elements are listed as one and two. If you look at the paragraph that's numbered one, and read down one, two, three lines. You'll see that this line reads "Sung Yoo, also known as John," and then it says "caused bodily injury to In Song Kim." The word "serious" should be placed after the word "caused." I'm going to read this instruction to you again with that insertion, so let's begin again on page 47.

The circuit court then reiterated as it said it would. The record copy of the "Set of Instructions Given to the Jury During Deliberations" shows a corresponding, handwritten interlineation of the word "serious." The circuit court concluded its instructions on the Count II included offense, thus:

The Court previously instructed you that there are alternative methods of proving the single included offense of Assault in the Second Degree. In Count II, if and only if you consider the included offense of Assault in the Second Degree, each alternative and the evidence that applies thereto are to be considered separately. The fact that you may find the Defendant not guilty or guilty of one of the alternatives does not mean that you must reach the same decision with respect to the other alternative.

The circuit court did not re-instruct the jury on permissible verdicts in Count II to account for the available second-degree included offense.

In the course of his closing argument on the charge of assault in the first degree in Count II, the DPA told the jury:

And you know that it is a protracted loss; the doctor testified as to when he could be able to walk, he estimated maybe six months to a year, if even, that he would be able to walk again the way he was before. And you saw Mr. Kim present the with two broken legs, he had two—he still had the two braces on, and you saw him going towards the board and trying to mark parts of the stuff. He's still in protracted loss.[7]

(Footnote supplied.)

Immediately before sending the jury to its deliberations, the circuit court rendered some final instructions. The circuit court explained the procedure for returning a verdict: "When you reach a verdict, the foreperson is to sign and date the verdict, appropriate forms for which will be given to you." The circuit court cautioned the jury, "You must not reveal to the Court or to any other person how the jury stands, numerically or otherwise, until you have reached a unanimous verdict and it has been received by the Court." It took the jury less than two hours to reach its verdicts. Before accepting the verdicts, the circuit court polled the jury and confirmed that each of the verdicts was unanimous.

The four verdict forms signed and dated by the jury foreperson are filed in the record's court file, but consistent with common but ill-advised practice in many of the circuit courts, the other verdict forms are not. However, as quoted above, the circuit court had promised that whatever verdicts the jury might reach, "appropriate forms for which will be given to you."

## II. Standards of Review.

### A. Plain Error.

Because Defendant failed to object to the jury instructions *sub judice,* he asserts plain error on appeal.

Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b) (2004) provides, "Plain errors or defects affecting substantial rights may be noticed although they were not brought to

the attention of the court." Obversely, HRPP Rule 52(a) (2004) provides, "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Specifically, HRPP Rule 30(f) (2004) provides, in pertinent part, "No party may assign as error the giving or the refusal to give, or the modification of, an instruction, ... unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the objection." *See also State v. Corpuz,* 3 Haw.App. 206, 216, 646 P.2d 976, 983 (1982) (citing the predecessor rule to HRPP Rule 30(f)—"Rule 30(e), HRPP (1977)," then holding that "[s]ince the instruction was not prejudicial to the defendant and the defendant made no objection, he cannot now raise the question on appeal. *State v. Onishi,* 59 Haw. 384, 581 P.2d 763 (1978); *State v. McNulty,* 60 Haw. 259, 588 P.2d 438 (1978)").

 "The general rule is that a reviewing court will not consider issues not raised before the trial court." *Corpuz,* 3 Haw.App. at 211, 646 P.2d at 980. "This court's power to deal with plain error is one to be exercised sparingly and with caution because the plain error rule represents a departure from a presupposition of the adversary system—that a party must look to his or her counsel for protection and bear the cost of counsel's mistakes." *State v. Kelekolio,* 74 Haw. 479, 515, 849 P.2d 58, 74–75 (1993) (citation omitted). "This court will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." *State v. Vanstory,* 91 Hawai'i 33, 42, 979 P.2d 1059, 1068 (1999) (brackets, citation and internal quotation marks omitted).

### B. Jury Instructions.

 "The standard of review for a trial court's issuance or refusal of a jury instruction is whether, when read and con-

---

7. The incident occurred in the early morning hours of August 3, 2003. The jury trial started

on January 22, 2004.

sidered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." *State v. Balanza,* 93 Hawai'i 279, 283, 1 P.3d 281, 285 (2000) (quotation [ (sic) ] and internal quotation marks omitted). "Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial." *State v. Sua,* 92 Hawai'i 61, 69, 987 P.2d 959, 967 (1999) (quoting *State v. Pinero,* 70 Haw. 509, 527, 778 P.2d 704, 716 (1989) (quotation [ (sic) ] omitted)). In other words,

> error is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error may have contributed to conviction.

*Id.* (quoting *State v. Heard,* 64 Haw. 193, 194, 638 P.2d 307, 308 (1981) (citations omitted)).

Jury instructions "to which no objection has been made at trial will be reviewed only for plain error." *State v. Sawyer,* 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998) (citing *Pinero,* 75 Haw. at 291–92, 859 P.2d at 1374). If the substantial rights of the defendant have been affected adversely, the error may be considered as plain error. *See id.*

*State v. Aganon,* 97 Hawai'i 299, 302, 36 P.3d 1269, 1272 (2001) (original brackets omitted).

### C. Constitutional Questions.

■ "We answer questions of constitutional law by exercising our own independent judgment based on the facts of the case, and, thus, questions of constitutional law are reviewed on appeal under the right/wrong standard." *State v. Rivera,* 106 Hawai'i 146, 155, 102 P.3d 1044, 1053 (2004) (citations, internal quotation marks and block quote format omitted).

### III. Discussion.

#### A.

■ For his first point of error on appeal, Defendant contends the circuit court's instructions on the offense of assault in the second degree included in Count II constituted plain error. However, because Defendant was convicted as charged in Count II of assault in the first degree, any error in the jury instructions on the included offense was harmless beyond a reasonable doubt. *State v. Gunson,* 101 Hawai'i 161, 165–66, 64 P.3d 290, 294–95 (App.2003).

■ Nonetheless, Defendant argues:

> Principally, the lower court virtually foreclosed the jury's consideration of the Included Offense. It failed to instruct the jury that, if they considered the Included Offense, they were to return verdicts of either "not guilty" or "guilty" as to that offense. Neither does the [record on appeal] evidence that the lower court provided verdict forms for the Included Offense. The fact that the Count II verdict instruction specifically limited the jury's choices to either "not guilty" or "guilty" only of Assault1 rendered the Included Offense instruction superfluous and effectively foreclosed the jury's consideration of Assault2 in Count II. The Included Offense instruction contained NO reference to Count II and did not immediately follow the elements instruction on the charged offense, such that the relationship between the two instructions and the manner by which the jury was to have considered each instruction were clear. The fact that the Included Offense instruction was placed five pages after the Count II verdict instruction and read to the jury in that order further ensured that the jury would not consider the Included Offense.

Opening Brief at 13–14 (citation to the record omitted; emphasis in the original). We disagree.

The verdict instructions on the charged offense expressly posed the choice of "not guilty" or "guilty." Although it is impossible to concretely confirm in the record whether cognate verdict forms were provided for the included offense,[8] on the latter the jury was

---

8. By the same token, it is impossible to see tangibly in the record on appeal whether "guilty"

clearly instructed that "you must consider whether [Defendant] is guilty of the included offense of Assault in the Second Degree." The word "whether" carries its own *vel non.* Indeed, we notice that it is a cardinal rule of good syntax to resist the urge to follow with "or not," whenever one uses the word "whether." Thus, and in sum, the jury was given to understand that, "[i]f and only if you find the Defendant ... not guilty of Assault in the First Degree, or you are unable to reach a unanimous verdict as to this offense," the jury's duty was then to consider and decide whether Defendant was not guilty or guilty of the included offense.

At the bottom line, Defendant's arguments in this respect rest squarely on the spurious proposition that a lack of propinquity equals a lack of coherence. That is not the way we look at it. On appeal, the jury instructions are to be "read and considered as a whole," *Aganon,* 97 Hawai'i at 302, 36 P.3d at 1272 (citation and internal quotation marks omitted), and from that perspective, we cannot conclude that the instructions—although by no means exemplary—were "prejudicially insufficient, erroneous, inconsistent, or misleading." *Id.* (citation and internal quotation marks omitted).

Defendant also argues on this point of error:

> In addition, the first paragraph of the Included Offense instruction tells the jury only to consider whether Yoo is *guilty,* but does not instruct them to consider whether he might be "not guilty" of Assault2. This wording incorrectly states the jury's options, unfairly emphasizes the decision that is detrimental to Yoo, and indicates that he is guilty of at least the Assault2.

Opening Brief at 14 (emphasis in the original). Here again, we disagree. We have already observed that the interrogatory "whether" necessarily poses the negative as well as the positive response. Moreover, the circuit court's instructions on how to deliberate upon the alternative means of proving the included offense expressly posed the choice between not guilty or guilty.

and "not guilty" verdict forms were provided for the charged offense in the first and the last three

Defendant finishes this point of error, thus:

> Finally, the court failed to properly correct the typographical error in the second alternative of the Included Offense. Element No. 1 of the written instruction erroneously stated the injury as "bodily injury," rather than "serious bodily injury." The prosecutor pointed out the error to the court, who explained the correction to the jury and reread the instruction regarding the second alternative with the proper term, "serious bodily injury." Although the court told the jury that, "The word 'serious' should be placed after the word 'caused[,]' " the court took no steps to ensure that every juror actually wrote the insertion on his/her copy of the instructions or, for example, received a corrected copy of that page. Moreover, the Instructions to the Jury in the Order in Which They Were Read filed by the court as part of the [record on appeal] fails to evidence the correction.

Opening Brief at 14 (citations to the record omitted). This argument is, quite simply, factually incorrect. The record copy of the instructions given to the jury during deliberations shows the word "serious" interlineated where it should be.

## B.

For his second point of error on appeal, Defendant asserts another plain error:

> As to the Included Offense in Count II, the court failed to instruct the jury that they must be unanimous as to any *alternative* by which they found that the State had proven that Assault2.... [T]he verdict would not have been truly unanimous if, for example, eight jurors found that the State had proven Assault2 by intentionally or knowingly causing substantial bodily injury and four jurors found that the State had proven Assault2 by recklessly causing serious bodily injury. To ensure that any Included Offense guilty verdict was unanimous, the court should have worded the

counts of the indictment, respectively.

verdict form so that the jury would have to indicate which alternative they chose.

Similarly, Count IV (Assault2 on Han) was also charged in the alternative....

As with the Included Offense in Count II, the court failed to instruct the jury that they must be unanimous as to any *alternative* by which they found that the State had proven the Assault2 on Han. The court should likewise have worded the verdict form so that the jury would have had to indicate which alternative they had unanimously chosen.

Yoo's convictions in Count II (Assault1 on Kim) and Count IV (Assault2 on Han) must be vacated because the failure to instruct the jury that they must unanimously agree on the particular alternative by which the State proved the Assault2 offense (either the Included Offense in Count II or the charged offense in Count IV) rendered the instructions as a whole prejudicially insufficient, erroneous, inconsistent, and misleading. More importantly, they deprived Yoo of his constitutional right to unanimous jury decisions as to those Counts.

Opening Brief at 15–17 (footnotes omitted; emphases in the original). This point lacks merit.

As we held above, any defects in the included offense instructions in Count II were harmless beyond a reasonable doubt because Defendant was convicted of the charged offense. *Gunson*, 101 Hawai'i at 165–66, 64 P.3d at 294–95.

■ As for Count IV, the jury instructions on the charged offense of assault in the second degree were not defective as Defendant avers. Those instructions told the jury that the offense "can [be] proved by the prosecution in either of two ways.... Each alternative and the evidence that applies thereto are to be considered separately." These jury instructions—allied with the reiterated reminders throughout that any verdict must be unanimous—were strong prophylactic against a mix-and-match verdict. When the jury instructions on the charged offense in Count IV are "read and considered as a whole," *Aganon*, 97 Hawai'i at 302, 36 P.3d at 1272 (citation and internal quotation

marks omitted), we cannot conclude "the instructions given [were] prejudicially insufficient, erroneous, inconsistent, or misleading." *Id.* (citation and internal quotation marks omitted). We observe, in this regard, that the circuit court polled the jury and confirmed that each of its verdicts was unanimous.

The foregoing analysis, *mutatis mutandis*, would apply with equal force to the included offense instructions in Count II if, *arguendo*, the *Gunson* doctrine did not there apply.

### C.

■ For his final point of error on appeal, Defendant complains that his constitutional rights to due process and equal protection were violated when he was prosecuted in Count II for assault in the first degree rather than assault in the second degree.

Defendant premises his argument on *State v. Modica*, 58 Haw. 249, 567 P.2d 420 (1977). The *Modica* rule does not, however, here apply:

We find no violation of the defendant's constitutional rights. A denial of these rights would be the result, only if a violation of the misdemeanor statute (HRS § 134–6) would invariably and necessarily constitute a violation of the felony provision (HRS § 134–9). *Palmore v. United States*, 290 A.2d 573 (D.C.App.1972); *United States v. Coppola*, 425 F.2d 660 (2d Cir.1969); *cf. State v. Canady*, 69 Wash.2d 886, 421 P.2d 347 (1966); *State v. Reid*, 66 Wash.2d 243, 401 P.2d 988 (1965); *State v. Reed*, 34 N.J. 554, 170 A.2d 419 (1961). Thus, where the same act committed under the same circumstances is punishable either as a felony or as a misdemeanor, under either of two statutory provisions, and the elements of proof essential to either conviction are exactly the same, a conviction under the felony statute would constitute a violation of the defendant's rights to due process and the equal protection of the laws. *Olsen v. Delmore*, 48 Wash.2d 545, 295 P.2d 324 (1956); *State v. Pirkey*, 203 Or. 697, 281 P.2d 698 (1955). We do not, however, find this to be the case here.

*Modica,* 58 Haw. at 250–51, 567 P.2d at 421–22. When it comes to assault in the first degree and assault in the second degree, decidedly, "the elements of proof essential to either conviction are [not] exactly the same," *id.* at 251, 567 P.2d at 422 (citations omitted), and Defendant's point has no merit.

Defendant seeks the desideratum of exact equivalence, thus:

It is common knowledge that all bone fractures require several weeks, if not months, to heal, such that the injured person would suffer protracted loss or impairment of the function of that bodily member until the fracture has healed. Since there can be no bright-line distinction between a bone fracture which constitutes "substantial bodily injury" and a bone fracture which constitutes "serious bodily injury" as a protracted loss or impairment, Yoo faced ten, rather than five, years imprisonment for the same act entirely at the discretion of the prosecutor, in violation of the *Modica/Kuuku*[9] rule, as well as his constitutional rights to due process and equal protection.

Finally, the portion of the definition of "serious bodily injury" consisting of *"protracted loss or impairment of the function of any bodily member or organ"* is unconstitutionally vague when the injury simultaneously qualifies as a "bone fracture" under subsection (3) of the HRS § 707–700 [(Supp.2004)] definition of "substantial bodily injury" because the prosecutor's decision to charge Assault1 in violation of HRS § 707–710 [(1993)], rather than Assaul[t]2 in violation of HRS § 707–711(1)(a) [(1993)], is completely arbitrary.

Opening Brief at 19 (emphasis in the original; footnote supplied). We disagree.

It is emphatically not common knowledge that all bone fractures result in a protracted loss or impairment of function. And it is not true that no standards exist to cabin the prosecutor's discretion. *See, e.g., In re Doe,* 106 Hawai'i 530, 538, 107 P.3d 1203, 1211 (App.2005) ("impaired vision that lasts almost eleven months is protracted enough for purposes of HRS §§ 707–700 [(1993)] and –710(1)" (citations omitted)).

9. *State v. Kuuku,* 61 Haw. 79, 80–81, 595 P.2d 291, 293 (1979).

On this point of error, the observation of the *Modica* court is apropos:

Statutes may on occasion overlap, depending on the facts of a particular case, but it is generally no defense to an indictment under one statute that the accused might have been charged under another. *Territory v. Awana,* 28 Haw. 546 (1925); *In re Converse,* 137 U.S. 624, 11 S.Ct. 191, 34 L.Ed. 796 (1891); *State v. Swan,* 55 Wash. 97, 104 P. 145 (1909). *Cf. State v. Travis,* 45 Haw. 435, 368 P.2d 883 (1962). Under those circumstances, the matter is necessarily and traditionally subject to the prosecuting attorney's discretion. *Newman v. United States,* 382 F.2d 479 (D.C.Cir.1967); *Hutcherson v. United States,* 345 F.2d 964 (D.C.Cir.1965), *cert. denied* 382 U.S. 894, 86 S.Ct. 188, 15 L.Ed.2d 151.

*Modica,* 58 Haw. at 251–52, 567 P.2d at 423.

## IV. Conclusion.

Accordingly, the April 14, 2004 judgment of the circuit court is affirmed.

