36 P.3d 1269

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Earlily AGANON, Defendant–Appellant.**

No. 23490.

Supreme Court of Hawai'i.

Dec. 20, 2001.

Reconsideration Denied Jan. 10, 2002.

**300**

Rose Anne Fletcher, Deputy Public Defender, on the briefs, for defendant-appellant.

Glenn J. Kim, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, and ACOBA, JJ.

1. The Honorable John Bryant presiding.

Opinion of the Court by RAMIL, J.

Defendant-appellant Earlily Aganon (Aganon) appeals from the first circuit court's [1] conviction of and sentence for murder in the second degree, in violation of Hawai'i Revised Statutes (HRS) § 707–701.5 (1993). On appeal, Aganon contends that the circuit court erred because (1) the jury instructions on second degree murder were plainly erroneous inasmuch as (a) they failed to set out that the elements are conduct and result, (b) they improperly claimed that state of mind is a material element, (c) they failed to require the jury to find that the state of mind applies to each element of the offense, and (d) they allowed the jury to conclude guilt without finding that Aganon committed each element of the offense with the requisite state of mind; (2) its response to the jury communication was plain error because it allowed the jury to conclude guilt without finding that Aganon committed each element of the offense with the requisite state of mind; and (3) it failed to instruct the jury as to the mitigating defense of extreme mental or emotional disturbance (EMED) manslaughter.

Because the jury instructions and the circuit court's response to the jury communication improperly allowed the jury to find Aganon guilty without finding that she committed each element of the offense with the requisite state of mind, the circuit court committed plain error. Accordingly, we vacate Aganon's conviction of and sentence for second degree murder, and remand for a new trial consistent with this opinion.

## I. BACKGROUND

In October 1997, Jocelyn and Randall Canencia hired Aganon to care for two of their children, Karie and Anthony, during the weekdays. On October 21, 1997, at approximately 5:30 a.m., Randall drove six-month-old Karie and twenty-one-month-old Anthony to Aganon's residence.

Later that day, at approximately 12:45 p.m., Aganon phoned Jocelyn at work to inform her that Karie was "having a hard

time breathing." Aganon also mentioned that Karie had slept from 6:00 a.m. to 10:00 a.m. and that, when Aganon had checked on Karie at 10:00 a.m. to feed and change her diaper, Karie appeared "fine." Although Jocelyn told Aganon that she would call her doctor, Jocelyn instead called Randall to see if he was at home. After failing to contact Randall, Jocelyn received another phone call from Aganon. Again, Aganon expressed her concern with Karie's breathing difficulties. In response, Jocelyn told Aganon that she would leave work to check on Karie.

At 2:00 p.m., Jocelyn arrived at her home, where she met Randall. They both then headed to Aganon's house. When they arrived at Aganon's house, Jocelyn asked Aganon where Karie was. Aganon pointed to one of the bedrooms. Inside the bedroom, Jocelyn discovered Karie was unconscious and "lying stiff":

> Her head was straight flat on the floor and her head was straight out to the ceiling, and [Jocelyn] could see her eyes w[ere] all white. [Jocelyn] could see the black bottom part of her eye was all rolled up and it was shaking or whatever.... She was—every now and then she was trying to grasp for air.

After Randall unsuccessfully attempted to call 911, he and Jocelyn rushed Karie to Kapiolani Medical Center.

Aganon testified that when Randall dropped Karie off at her house on October 21, 1997, Karie was not stiff, but that when she breathed, she made a "snoring" sound. At about 10:00 a.m., when Aganon changed Karie's diaper, Karie was still sleeping. At that time, Karie was not stiff or convulsing. Nevertheless, she noticed that Karie's breathing was louder and made a "grasping" sound. Aganon called Jocelyn, who said that she would call her husband and doctor. But, after not hearing from Jocelyn and with Karie's breathing worsening, she called Jocelyn again. Only when Jocelyn and Randall came to her house did Aganon notice that Karie was "really grasping for air," that her arms appeared stiff, and that she was having seizures. Finally, Aganon testified that she loved Karie and that Karie was "an easy baby" to care for. She denied harming Karie

in any way or that there had been an accident involving Karie.

On October 24, 1997, Karie died in the hospital. Robert Asato, an investigative social worker for the Child Protective Services, testified that, when he notified Aganon that her child care licence was suspended because of Karie's death, Aganon became "very angry." In fact, Aganon threatened not only to "rip the letter right in front of [his] eyes," but, on three occasions, to "kill" him.

After closing arguments, the circuit court instructed the jury on murder in the second degree:

> The defendant is charged with the offense of Murder in the Second Degree. A person commits the offense of Murder in the Second Degree if she intentionally or knowingly causes the death of another person. There are two material elements of the offense of Murder in the Second Degree, each of which the prosecution must prove beyond a reasonable doubt.
>
> These two elements are[:] (1), that on or about the 21st day of October, 1997, to and including the 24th day of October, 1997, on the island of Oahu, in the City and County of Honolulu, State of Hawaii, [Aganon] caused the death of Karie Canencia. And, (2), that [Aganon] did so intentionally or knowingly.
>
> ....
>
> A person acts intentionally with respect to her conduct when it is her conscious object to engage in such conduct.
>
> A person acts intentionally with respect to attendant circumstances when she is aware of the existence of such circumstances or believes or hopes that they exist.
>
> A person acts intentionally with respect to a result of her conduct when it is her conscious object to cause such a result.
>
> A person acts knowingly with respect to her conduct when she is aware that her conduct is of that nature.
>
> A person acts knowingly with respect to attendant circumstances when she is aware that such circumstances exist.
>
> A person acts knowingly with respect to a result of her conduct when she is aware

that it is practically certain that her conduct will cause such a result.

The circuit court declined to instruct the jury on the mitigating defense of EMED manslaughter. Neither the prosecution nor Aganon objected.

During jury deliberation, the jury sent the following communication to the judge:

> Regarding definitions of intentionally and knowingly in the instructions, three conditions/definitions are present for each word. Must all three be true, or is agreement with one of the three sufficient to be so defined?

With no objection from Aganon,[2] the judge responded, "Unanimous agreement with one of the three is sufficient."

The jury found Aganon guilty as charged.

## II. STANDARD OF REVIEW

■■■ "The standard of review for a trial court's issuance or refusal of a jury instruction is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." *State v. Balanza*, 93 Hawai'i 279, 283, 1 P.3d 281, 285 (2000) (quotation and internal quotation marks omitted). "[E]rroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial." *State v. Sua*, 92 Hawai'i 61, 69, 987 P.2d 959, 967 (1999) (quoting *State v. Pinero*, 70 Haw. 509, 527, 778 P.2d 704, 716 (1989) (quotation omitted)) (brackets in original). In other words,

> [e]rror is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error may have contributed to conviction.

*Id.* (quoting *State v. Heard*, 64 Haw. 193, 194, 638 P.2d 307, 308 (1981) (citations omitted)).

■■ Jury instructions "to which no objection has been made at trial will be reviewed only for plain error." *State v. Sawyer*, 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998) (citing *Pinero*, 75 Haw. at 291–92, 859 P.2d at 1374). If the substantial rights of the defendant have been affected adversely, the error may be considered as plain error. *See id.*

## III. DISCUSSION

We begin by addressing Aganon's second point of error on appeal because it incorporates the same arguments raised in her first point of error on appeal.

### A. Circuit Court's Response to Jury Communication

■ Aganon argues that the circuit court failed to properly instruct the jury that, in order to find her guilty of second degree murder, it must unanimously find the requisite state of mind was present with respect to (1) her conduct, (2) the attendant circumstances, and (3) the result of her conduct. Instead, the court erred by informing the jury that it need only have "unanimous agreement with one of the three."

HRS § 701–114 (1993) specifies that "no person may be convicted of an offense unless ... [t]he state of mind required to establish *each element of the offense*" is proven beyond a reasonable doubt. (Emphasis added.) Similarly, HRS § 702–204 (1993) provides that "a person is not guilty of an offense unless the person acted intentionally, knowingly, recklessly, or negligently, as the law specifies, with respect to *each element of the offense.*" (Emphasis added.) In turn, HRS § 702–205 (1993) identifies the elements of an offense to be:

> such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as:
>
> (a) *Are specified by the definition of the offense,* and
>
> (b) Negative a defense (other than a defense based on the statute of limitations, lack of venue, or lack of jurisdiction).

---

2. Although the prosecution initially objected, it later withdrew the objection.

(Emphasis added.) We note that not all offenses, as defined by the legislature, have all three possible elements. For example, we recently observed that prohibited possession of a firearm, in violation of HRS § 134–7(b) (1993 & Supp.2000), contains only the two elements of conduct and attendant circumstances. *See State v. Valentine*, 93 Hawai'i 199, 207, 998 P.2d 479, 487 (2000). In any event, the totality of these various items— the proscribed conduct, attendant circumstances, and the specified result of conduct, when specified by the definition of the offense, constitute the "elements" of an offense. HRS § 702–205.

 Pursuant to HRS § 707–701.5, a person commits the offense of murder in the second degree when the "person intentionally or knowingly causes the death of another person." Any voluntary act (e.g., physical abuse) or omission may satisfy the conduct element of the offense. The death of another person, as the intentional or knowing result of the conduct, constitutes the result element of the offense.

The circuit court's response to the jury's communication was erroneous. The jury, for example, could have found that Aganon possessed the requisite state of mind with respect to her conduct (physical abuse of Karie), but not with respect to the death that resulted. *See State v. Haanio*, 94 Hawai'i 405, 417, 16 P.3d 246, 258 (2001); *State v. Kupau*, 76 Hawai'i 387, 391–92, 879 P.2d 492, 496–97 (1994), *overruled on other grounds by Haanio*, 94 Hawai'i at 405, 16 P.3d at 246. By virtue of the circuit court's erroneous response to the jury's question, the jury could have found Aganon guilty of second degree murder, even though it did not find the requisite state of mind with respect to "each element of the offense." HRS § 702–204. Thus, the court's error adversely affected Aganon's substantial rights and, as such, constituted plain error. Accordingly, we vacate Aganon's conviction and sentence and remand for a new trial consistent with this opinion.

In order to provide guidance to the circuit court on remand, we examine Aganon's remaining arguments on appeal.

B. *Jury Instructions on Second Degree Murder*

Aganon contends that the circuit court's jury instructions with respect to second degree murder was plainly erroneous because (1) they failed to set out that the elements are conduct and result, (2) they improperly claimed that state of mind is a material element, (3) they failed to require the jury to find that the state of mind applies to each element of the offense, and (4) they allowed the jury to conclude guilt without finding that Aganon committed each element of the offense with the requisite state of mind.

 The first two contentions concern the instruction that the "two material elements of the offense" are:

(1), that on or about the 21st day of October, 1997, to and including the 24th day of October, 1997, on the island of Oahu, in the City and County of Honolulu, State of Hawaii, [Aganon] caused the death of Karie Canencia. And, (2), that [Aganon] did so intentionally or knowingly.

As discussed in Section III.A, the two elements of second degree murder in this case are "conduct" (Aganon intentionally or knowingly abused Karie) and "result" (Aganon intended or knew that death would result). In this case, the circuit court incorrectly listed "conduct" and "result" together as one element. On remand, the elements of "conduct" and "result" should be separately listed. Although the circuit court erroneously listed the requisite state of mind as a "material element," contrary to HRS § 702–205, *see State v. Klinge*, 92 Hawai'i 577, 584 n. 3, 994 P.2d 509, 516 n. 3 (2000), the error did not adversely affect Aganon's substantial rights. The court's jury instructions were consonant with the spirit of HRS § 702–204, which prescribes that the requisite state of mind applies to each element of the offense. Thus, the jury instructions were substantively, if not technically, correct.

 Aganon's third and fourth arguments relate to the circuit court's allowing the jury to find Aganon guilty based on only one element of the offense so long as it was accompanied by the requisite state of mind. Given the jury's communication regarding

the necessity of finding the state of mind with respect to all elements, we cannot say that the jury instructions did not adversely affect Aganon. Indeed, the jury demonstrated its confusion regarding the proper application of state of mind to the elements of the offense. Moreover, the circuit court, without objection from counsel, responded to the jury communication in a way that suggested confusion as to the correct application. Thus, the court's jury instructions were plainly erroneous.

### C. "Extreme Mental or Emotional Disturbance" Instruction

■ Aganon claims that the circuit court committed plain error by failing to instruct the jury on the defense of EMED manslaughter. As support, she points to generalized testimony that she sometimes loses her temper in stressful situations and that Karie could cry a lot.

This court has explained that "EMED manslaughter ... is [] the intentional [or knowing] killing of another 'while under the influence of a reasonably induced emotional disturbance causing a temporary loss of normal self-control,'" as described in HRS § 707–702(2). *State v. Sawyer*, 88 Hawai'i 325, 333, 966 P.2d 637, 645 (1998) (quoting *State v. Knight*, 80 Hawai'i 318, 326, 909 P.2d 1133, 1141 (1996) (quotation omitted)) (emphasis omitted). Moreover, we have established the analytical framework for determining whether a trial court is required to provide an EMED instruction:

> We have stated that the defendant must satisfy a subjective/objective test in proffering a "reasonable explanation" in accordance with HRS § 707–702(2). First, in satisfying the subjective portion, the record must reflect the circumstances as the defendant believed them to be. Second, in satisfying the objective portion, the record must support a reasonable explanation or excuse for the actor's disturbance.
>
> Much confusion has arisen over whether the court or the jury determines the reasonableness of the defendant's explanation or excuse. We hold that the trial court determines whether or not the record reflects *any* evidence of a subjective nature

that the defendant acted under a loss of self-control resulting from extreme mental or emotional disturbance. If the record does not reflect *any* such evidence, then the trial court shall properly refuse to instruct the jury on EMED manslaughter.

*Id.* at 333, 966 P.2d at 645 (emphases in original).

In this case, generalized testimony that Karie could cry a lot and that Aganon sometimes loses her temper in stressful situations, without more, is not probative that during the incident in question, Aganon acted, even from a subjective standpoint, "under a loss of self-control resulting from [EMED]." *See id.* Asato's testimony that Aganon, on a different occasion, threatened him and got "very angry" is simply extraneous. As we clarified in *State v. Moore*, the "relevant inquiry is whether [defendant] was under [the] influence [of an EMED] *at the time [of the alleged crime]* and whether there was a reasonable explanation, viewed from [defendant's] standpoint, for the disturbance." 82 Hawai'i 202, 210, 921 P.2d 122, 130 (1996) (emphasis added). In that case, we disregarded evidence that occurred within minutes after—rather than during—the alleged commission of the crime. *See id.* at 210–11, 921 P.2d at 130–31. Thus, Asato's testimony about an incident occurring days after the alleged offense does not demonstrate any emotional disturbance with respect to the offense in question. In addition, Aganon did not testify that she was acting under any mental or emotional disturbance. In fact, she testified that she never did "anything to physically harm Karie."

Thus, the circuit court did not err by declining to provide an EMED instruction.

### IV. CONCLUSION

For the reasons discussed above, we vacate Aganon's conviction of and sentence for second degree murder and remand for a new trial consistent with this opinion.