Electronically Filed
Supreme Court
SCWC-14-0001047
18-MAY-2017
08:10 AM

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI,
Respondent/Plaintiff-Appellee,

vs.

CHARLES L. BOVEE,
Petitioner/Defendant-Appellant.

SCWC-14-0001047

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-14-0001047; CR. NO. 13-1-1748)

MAY 18, 2017

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY POLLACK, J.

This case arises from an undercover operation conducted by the Honolulu Police Department (HPD) on November 26, 2013. The operation resulted in the arrest of defendant Charles L. Bovee and codefendant Adam J. Apilado, both of whom were later charged by felony information with one count of methamphetamine trafficking in the second degree, in violation

of Hawaii Revised Statutes (HRS) § 712-1240.8 (Supp. 2013) (repealed 2016).[1] Because the Circuit Court of the First Circuit's (circuit court) jury instruction on second-degree methamphetamine trafficking could have been reasonably understood as relieving the State of its burden to prove that the relevant state of mind applies to the "attendant circumstances" element of the charged offense, we hold that the instruction was prejudicially erroneous and remand this case for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

### A. Relevant Testimony at the Jury Trial

At a jury trial that commenced on April 21, 2014,[2] HPD Officer Jerome Pacarro testified to the following description of events. On November 26, 2013, at approximately 1:30 p.m., he was assigned to an undercover operation involving an attempt to purchase narcotics from street-level dealers in Kaka'ako.[3] On the corner of Ohe Street and Olomehani Street, he saw two men standing (later identified as Bovee and codefendant Apilado),

---

[1] In relevant part, HRS § 712-1240.8 states that "[a] person commits the offense of methamphetamine trafficking in the second degree if the person knowingly distributes methamphetamine in any amount." HRS § 712-1240.8(1).

[2] The Honorable Glenn J. Kim presided.

[3] Officer Pacarro described a street-level dealer as someone who sells twenty- to forty-dollars' worth of narcotics, which is usually for personal use.

and Officer Pacarro made eye contact with them.  Based on Officer Pacarro's observation of the men's proximity, conversation, body language, and demeanor, they "looked like two friends hanging out."

Officer Pacarro parked his car, and Apilado approached his driver's side window and engaged him in conversation even though Officer Pacarro did not call out to Apilado or signal him to approach.  The conversation progressed into Officer Pacarro asking Apilado if anybody "get"; the officer explained that in street vernacular (i.e., street slang), this means, "[D]oes anybody have narcotics for purchase, for sale?"  Apilado asked what Officer Pacarro was looking for, and the officer replied that he was looking for "clear."  Officer Pacarro explained that "[c]lear is another street vernacular used to describe crystal methamphetamine."  Apilado asked how much Officer Pacarro wanted, and the officer responded that he wanted forty dollars' worth.

During the conversation between Apilado and Officer Pacarro, Bovee stayed where he was, about ten feet away from Apilado and the officer.  Apilado turned and yelled to Bovee to get the "stuff" for Officer Pacarro.  Bovee did not respond or do anything.  Apilado then told the officer that he was "going to send his boy" to get the methamphetamine, after which Apilado

3

approached Bovee, who ended up coming to Officer Pacarro's driver's side window and told the officer that he had to go to a nearby tent to retrieve the "stuff." Bovee told Officer Pacarro that he should give him the money at that point, but Officer Pacarro told Bovee that he did not want to get ripped off and asked Bovee if he could go with him to get the "stuff." Bovee agreed. Bovee, Apilado, and Officer Pacarro walked together and approached a brown tent, but at the intersection across from where the brown tent was located, Apilado told Officer Pacarro that they should stop there and that the officer should give the money to Bovee. Officer Pacarro handed the money to Bovee, who then entered the tent alone. Five minutes passed, during which Officer Pacarro and Apilado engaged in conversation and Apilado yelled numerous times for Bovee to hurry up. Bovee then exited the tent with a white cigarette-type box in his hand and gave the box to Apilado, who then handed the box to Officer Pacarro. Inside the box, Officer Pacarro observed a "clear ziploc kind of bag, containing white crystalline substance." Between the time that Bovee exited the tent and gave Apilado the box, Officer Pacarro did not see anyone put anything into the box. The substance recovered by Officer Pacarro was later subjected to chemical analysis and identified as crystal methamphetamine.

Bovee also testified to the following recounting of events. On November 26, 2013, a white car pulled up in the area where Bovee and Apilado were located. After the car parked, Apilado approached the car, and Apilado and the driver of the car "seemed like friends." After having a brief conversation with the driver, Apilado approached Bovee and asked Bovee to take some money from the driver and bring it to Apilado. Bovee was hesitant and refused to do Apilado's bidding, but Apilado insisted and "seemed a little more hostile as [Bovee] kept refusing," so Bovee eventually approached the car.

When Bovee approached the driver, the driver did not explain what the money was for and refused to give the money. Instead, the driver got out of the car and talked to Apilado; Bovee did not hear the conversation. Apilado and the driver started walking towards the corner of Ohe and Olomehani Streets, and Apilado told Bovee to follow. Apilado then told the driver to hand Bovee the money, and he instructed Bovee to take the money and deliver it to Cory, a lady in the brown tent. Bovee did not know how much money the driver handed him. Bovee delivered the money to Cory, who then went inside the tent even though Bovee did not tell her what he (Bovee) needed; while this was happening, Apilado and the driver were waiting at the corner of the intersection. When Cory exited the tent, she handed

Bovee a pack of cigarettes. Bovee did not look inside the pack and delivered it to Apilado, who then handed it to the driver. Later that day, Bovee and Apilado were arrested.

During his testimony, Bovee was asked whether he remembered saying during a post-arrest interview that he "knew Apilado was doing a drug deal." Bovee answered in the affirmative but clarified that he only knew about the fact that Apilado was engaging in a drug deal after he was arrested.[4]

Bovee testified that at the time of the transaction, there were no conversations about drugs, the amount of drugs, or the amount of money that the driver gave, and Bovee only followed Apilado's instruction to take some money from the driver. Bovee did not get any money out of his participation in the transaction or any other benefit whatsoever. He did not know what happened to the money.

## B. Settling of Jury Instructions

The State's proposed instruction for the charged offense of second-degree methamphetamine trafficking was

---

[4]     Bovee also stated during the interview that there was nothing in the cigarette pack when he had it and that it was Apilado who put drugs in the pack and gave it to the driver. The pack felt empty when he received it from Cory, so Bovee assumed that it was empty without actually opening it and checking its contents. Bovee indicated that he did not know that there were drugs in the cigarette pack. At the end of his interview, however, Bovee apparently stated that he had a "good idea" what was in the pack. Bovee clarified at trial that he only "had a feeling" that what transpired was not "a normal deal." After he was arrested and detained, and after understanding what he was charged with, Bovee "figured" that Apilado was engaged in a drug deal.

identical to Hawai'i Pattern Jury Instructions--Criminal (HAWJIC)

No. 13.62:

> In Count I of the Information, the Defendant, CHARLES BOVEE, is charged with the offense of Methamphetamine Trafficking in the Second Degree.
>
> A person commits the offense of Methamphetamine Trafficking in the Second Degree if he knowingly distributes methamphetamine in any amount.
>
> There are two material elements of the offense of Methamphetamine Trafficking in the Second Degree, each of which the prosecution must prove beyond a reasonable doubt.
>
> The two elements are:
>
> 1. That on or about November 26[th][,] 2013, in the City and County of Honolulu, State of Hawaii, the Defendant distributed methamphetamine in any amount;
>
> and
>
> 2. That the Defendant did so knowingly.

The circuit court's proposed instruction on second-degree methamphetamine trafficking was as follows:

> The Defendant, Charles L. Bovee, is charged with the offense of Methamphetamine Trafficking in the Second Degree.
>
> A person commits the offense of Methamphetamine Trafficking in the Second Degree if he knowingly distributes methamphetamine in any amount.
>
> There is one material element of the offense of Methamphetamine Trafficking in the Second Degree, which the prosecution must prove beyond a reasonable doubt.
>
> The element is as follows:
>
> 1. That on or about the 26th day of November, 2013, in the City and County of Honolulu, State of Hawaii, the Defendant distributed methamphetamine in any amount, and he was aware that he was doing so.
>
> "To distribute" means to sell, transfer, prescribe, give, or deliver to another, or to leave,

>       barter, or exchange with another, or to offer or agree to
>       do the same.

(Emphasis added.) The court explained the rationale behind its proposed instruction:

>       Court's proposed 1 is the elements instruction for the charged offense, meth traffic in the second degree. You see what I do here. I obviate the need to give them the definitions of knowingly. I obviate the need for the jury to figure out whether the element is conduct, attendant circumstances, or result of conduct.
>
>       I think it's clearly a conduct element. HAWJIC has two elements, with one element the state of mind, which they always do, which is wrong according to Aganon.[5]
>
>       And, like I said, I do it this way because I think the charge lends itself to this treatment. And it's -- anything I can do to keep the jury -- make their job easier, and keep them from having to do stuff, and to keep them from being confused, I like to do. So that's why I do it this way. I incorporate the knowing state of mind, and the definition of knowing as to conduct, right into the element.
>
>       And this obviates the need to give them, like I say, the definitions of knowingly. And it obviates the need for them to make certain decisions, like is -- what kind of element is this, et cetera. So that's why I do it this way.

(Emphases added.)

The State objected to the court's instruction and requested that the court give the standard pattern instruction as provided by HAWJIC No. 13.62. The court explained that its proposed instruction simplifies the analytical framework for the jury because the instruction clarifies that the only element of the charged offense is a "conduct" element, thereby eliminating the risk of the jury erroneously characterizing the element of

---

[5] The circuit court was referring to State v. Aganon, 97 Hawai'i 299, 36 P.3d 1269 (2001).

8

the offense and, consequently, the risk of the jury misapplying the "knowing" state of mind:

> You know, they're never told what is this element. Is it conduct, the result of conduct, or attendant circumstance. So they have to make that decision. Before they can apply the correct definition of the state of mind to the element, they got to decide what kind of an element it is. Correct?
>
> . . . .
>
> And what if they choose wrong? What if they say I think it's a result of conduct. . . . Then they're going to apply the wrong definition of knowingly to that element, because I think it's a conduct element.
>
> You know, this obviates that for them. It takes them out of their hands. And it builds into the element, which is a conduct element, the definition of knowingly as to conduct, which is that the person is aware that his conduct is of that nature. And I think that's materially the same as the person's aware that he's doing whatever he's doing, that he's committing the act.

The court reasoned that its proposed instruction is essentially what the jury has to decide:

> And what they have to decide is, did he distribute methamphetamine in any amount? And was he aware that his conduct was of that nature.

The court also reiterated that its approach is appropriate because second-degree methamphetamine trafficking only has "one element. It's conduct. And you've got one state of mind. And it's knowingly."

Defense counsel objected to the court's proposed instruction on the charged offense, arguing, inter alia, that the State was required to prove beyond a reasonable doubt that Bovee knew that the substance he was distributing was methamphetamine. Defense counsel also inquired as to the

9

court's underlying reasoning for withholding the jury instruction on the definition of "knowingly" as provided by HAWJIC No. 6.03.[6]  The court explained that it was not going to give the definition of "knowingly" because doing so would be redundant and confusing with respect to the instructions the court would be giving.

Accordingly, the court submitted to the jury its proposed instruction on second-degree methamphetamine trafficking over both parties' objection.[7]  HAWJIC No. 6.03 on the definition of "knowingly" was not given to the jury.

The jury found Bovee guilty of second-degree methamphetamine trafficking.  In its July 9, 2014 Judgment of Conviction and Sentence (judgment of conviction), the circuit court sentenced Bovee to ten years of incarceration with a

---

[6]     HAWJIC No. 6.03 defines "knowingly" as follows:

A person acts knowingly with respect to his conduct when he is aware that his conduct is of that nature.

A person acts knowingly with respect to attendant circumstances when he is aware that such circumstances exist.

A person acts knowingly with respect to a result of his conduct when he is aware that it is practically certain that his conduct will cause such a result.

[7]     The court's proposed instruction on the included offense of promoting a dangerous drug in the third degree was identical in format to the court's instruction on second-degree methamphetamine trafficking.  This instruction was also given to the jury over both parties' objection, which was based upon the same reasons underlying their objection to the court's decision to give the proposed instruction on the charged offense.

10

mandatory minimum term of one year of incarceration and to a mandatory fine. Bovee timely filed a notice of appeal to the Intermediate Court of Appeals (ICA).

## II. ICA PROCEEDINGS

In his opening brief, Bovee argued that the jury instructions in this case "only required the jury to unanimously find that he was aware that his conduct was the distribution of an object"; the instructions did not require the jury to unanimously find, with respect to the attendant circumstances element, "that [he] was aware that what he was distributing was methamphetamine." Bovee maintained that, contrary to the circuit court's determination that second-degree methamphetamine trafficking only has a conduct element, the offense actually has two elements: conduct and attendant circumstances. Bovee contended that the circuit court's error was prejudicial because his defense was that "he did not know what the money was for," nor did he know that "there was methamphetamine in the cigarette box."

In its answering brief, the State asserted that the circuit court's instruction with regard to second-degree methamphetamine trafficking adequately informed the jury that the "knowing" state of mind applied to both the attendant circumstance and the conduct elements of the offense, not just

11

to the conduct element.  The State submitted that there is no mandate that the circuit court instruct the jury by the separate elements of the charged offense.  The State concluded that the court provided an understandable instruction that aided the jury in applying the law to the facts of the case.

In his reply brief, Bovee maintained that, while it would appear at first glance that the circuit court's instruction on the charged offense was sufficient to inform the jury that the defendant must have been aware that he was distributing methamphetamine, the phrase that "he was aware that he was doing so" could easily be interpreted as requiring the defendant to be aware of his conduct of distributing and not necessarily that he was also aware that what he was distributing was methamphetamine.[8]

The ICA issued a Summary Disposition Order (SDO) on December 9, 2016, affirming the judgment of conviction.  The ICA explained that, "[w]hen jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent,

---

[8]    Bovee and the State made similar arguments with regard to the included offense of promoting a dangerous drug in the third degree.

12

or misleading."[9]  (Quoting State v. Frisbee, 114 Hawaiʻi 76, 79-80, 156 P.3d 1182, 1185-86 (2007)).  Applying this standard to the facts of this case, the ICA reasoned that while the challenged jury instruction may have been "technically . . . incorrect," it was "substantively correct" and was not prejudicially insufficient.  The ICA pointed to this court's decision in Aganon as a basis for its decision.

> For example, in Aganon, even where the trial court improperly conflated the conduct and result material elements of murder in the second degree, the supreme court observed that "the [jury instruction] error did not adversely affect Aganon's substantial rights.  The court's jury instructions were consonant with the spirit of HRS § 702-204 [(2014 Repl.)], which prescribes that the requisite state of mind applies to each element of the offense.  Thus, the jury instructions were substantively, if not technically, correct."

(Quoting State v. Aganon, 97 Hawaiʻi 299, 303, 36 P.3d 1269, 1273 (2001)).

As to Bovee's argument that the circuit court's instruction was prejudicial to his defense--that he was not aware that the object he was distributing was methamphetamine--the ICA responded that "[a] reasonable jury would understand that the offense required that Bovee distributed methamphetamine in any amount."  In addition, the ICA reasoned that "[t]he jury clearly disbelieved Bovee's testimony as to his knowledge of the methamphetamines within the cigarette pack and found him guilty

---

[9]    The ICA's SDO can be found in full at State v. Bovee, No. CAAP-14-0001047, 2016 WL 7189933 (App. Dec. 9, 2016) (SDO).

13

of knowingly distributing those methamphetamines." Thus, the ICA concluded that the circuit court did not err in issuing its instruction regarding the charged offense or the included offense.

### III. STANDARD OF REVIEW

The propriety of jury instructions is a question of law reviewed de novo using the following standard:

> [W]hether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading. Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial. . . . If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside.

State v. Frisbee, 114 Hawai'i 76, 79–80, 156 P.3d 1182, 1185–86 (2007) (quoting State v. Gonsalves, 108 Hawai'i 289, 292–93, 119 P.3d 597, 600–01 (2005)).

### IV. DISCUSSION

**A. The Elements of Second-Degree Methamphetamine Trafficking**

The fundamental principles underlying the manner in which the State must prove a charged offense against a defendant have been summarized by this court as follows:

> HRS § 701-114 (1993) specifies that "no person may be convicted of an offense unless . . . [t]he state of mind required to establish each element of the offense" is proven beyond a reasonable doubt. (Emphasis added.) Similarly, HRS § 702-204 (1993) provides that "a person is not guilty of an offense unless the person acted intentionally, knowingly, recklessly, or negligently, as

14

the law specifies, with respect to <u>each element of the offense</u>." (Emphasis added.)

<u>State v. Aganon</u>, 97 Hawaiʻi 299, 302, 36 P.3d 1269, 1272 (2001). HRS § 702-205 (1993) identifies the elements of an offense to be such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as are specified by the definition of the offense. <u>Id.</u> However, not all offenses enumerated in the Hawaii Penal Code contain all three elements. <u>Id.</u> at 303, 36 P.3d at 1273; see <u>State v. Valentine</u>, 93 Hawaiʻi 199, 207, 998 P.2d 479, 487 (2000). Thus, in reviewing the propriety of the circuit court's instruction on second-degree methamphetamine trafficking, the first step is to determine the elements that the statute specifies.

In relevant part, HRS § 712-1240.8 states as follows: "A person commits the offense of methamphetamine trafficking in the second degree if the person knowingly distributes methamphetamine in any amount." HRS § 712-1240.8 (Supp. 2013) (repealed 2016).[10] The "conduct" element of a criminal offense is defined as "an act or omission, or, where relevant, a series of acts or a series of omissions, or a series of acts and omissions." HRS § 701-118 (1993). The "conduct" element of

_____

[10] Act 231, § 56 repealed HRS § 712-1240.8. 2016 Haw. Sess. Laws Act 231, § 56 at 765. The relevant provisions of Act 231 and their effects on the disposition of this case will be discussed <u>infra</u>.

second-degree methamphetamine trafficking is to "distribute[]" an object. "'To distribute' means to sell, transfer, prescribe, give, or deliver to another, or to leave, barter, or exchange with another, or to offer or agree to do the same." HRS § 712-1240 (1993).

The "attendant circumstances" element, in offenses prohibiting the possession of certain objects, consists of "the particular qualities of the object that make it illegal to possess it." State v. Jenkins, 93 Hawai'i 87, 111, 997 P.2d 13, 37 (2000). In Jenkins, the defendant was charged with, among other offenses, possession of a firearm by a person convicted of certain crimes under HRS § 134-6(c) and (e) (1993 & Supp. 1997) (repealed 2006). Id. at 94, 997 P.2d at 20. In pertinent part, HRS § 134-6(e) provided, "Any person violating this section by carrying or possessing a loaded or unloaded pistol or revolver without a license . . . shall be guilty of a class B felony." HRS § 134-6(e). This court determined that "carrying" is the "conduct" element, and "the circumstances attendant to 'carrying' that object, i.e., the object's particular attribute rendering its carrying a criminal offense," under HRS § 134-6, is the object's "quality of being a firearm." Jenkins, 93 Hawai'i at 113, 997 P.2d at 39. Thus, this court held that the circuit court's instructions should have been as follows: that

the defendant "carried or possessed a firearm, in violation of HRS § 134-6(e), with (a) intent or knowledge that he carried or possessed an object and (b) with intent, knowledge, or reckless disregard of the substantial and unjustifiable risk that the object was a pistol or a revolver." Id. (emphases added).

This court employed the same analysis in Valentine, 93 Hawai'i 199, 998 P.2d 479. In that case, the defendant was charged with the offense of attempted prohibited possession of a firearm pursuant to HRS §§ 705-500 (1993) and 134-7(b) (1993). Id. at 201, 988 P.2d at 481. HRS § 134-7(b) provides, in relevant part, "No person who . . . has been convicted in this State or elsewhere of having committed a felony, or any crime of violence, or an illegal sale of any drug shall own, possess, or control any firearm or ammunition therefor." This court concluded that the elements of the offense described in HRS § 134-7(b), as applied to the facts of the Valentine case, are the following: "(1) that a person convicted of a felony (attendant circumstance); (2) possesses or controls an object (conduct); (3) exhibiting the attributes of a firearm (attendant circumstances)." Valentine, 93 Hawai'i at 207, 998 P.2d at 487. The court further observed that the offense under HRS § 134-7(b) does not have a "result of conduct" element. Id.

17

Guided by these precedents, second-degree methamphetamine trafficking has two "attendant circumstances" elements: (a) the object distributed is methamphetamine and (b) the amount of methamphetamine (which in this case is "any amount").[11]  Notably, "methamphetamine" and "any amount" are attributes that make the distribution (conduct element) criminal pursuant to HRS § 712-1240.8.[12]  Jenkins, 93 Hawai'i at 113, 997 P.2d at 39.  This is consistent with Jenkins and Valentine, both of which held that as to the conduct of "possession" and "carrying," the attendant circumstances are the qualities of the object that render its possession or carrying illegal.  Id.; Valentine, 93 Hawai'i at 207, 998 P.2d at 487.

The determination that "methamphetamine" and "any amount" are "attendant circumstances" elements of second-degree

---

[11]    As stated by this court, to obtain a conviction for distributing an illegal drug in cases "where the sale has been consummated," "the government must establish beyond a reasonable doubt that the substance involved is that specified in the indictment." State v. Schofill, 63 Haw. 77, 80-81, 621 P.2d 364, 368 (1980).  When the sale of the illegal drug has not been consummated and the gist of the offense is an offer or the agreement to sell narcotics, the State is not required to prove that the drug involved is that specified in the charging instrument. Id.  It follows that in such cases, the material elements with which a trial court must charge the jury would differ from those required in this case. See id.

[12]    Because the offense is committed when a person distributes methamphetamine in any amount, the "any amount" attendant circumstance element of the offense is satisfied when the State proves beyond a reasonable doubt that the object distributed is methamphetamine.  Therefore, for the purposes of second-degree methamphetamine trafficking, the "methamphetamine" and "any amount" attendant circumstances elements can be consolidated within a single element.

18

methamphetamine trafficking is underscored by HRS § 712-1252.[13]

HRS § 712-1252 provides, in pertinent part, the following:

> (1) The fact that a person engaged in the conduct specified by any section in this part is prima facie evidence that the person engaged in that conduct <u>with knowledge of the character, nature, and quantity of the dangerous drug</u>, harmful drug, detrimental drug, or intoxicating compounds possessed, distributed, or sold.

HRS § 712-1252(1) (1993) (emphasis added).  HRS § 712-1252(1) thus indicates that the State, in proving offenses under Part IV of HRS chapter 712 (Offenses Related to Drugs and Intoxicating Compounds), must demonstrate beyond a reasonable doubt that (1) the "person engaged in the conduct specified" by the applicable statute and (2) the "person engaged in that conduct with knowledge of the character, nature, and quantity of the dangerous drug."  HRS § 712-1252(1).  The character, nature, and quantity of the illegal drug are thus "attendant circumstances" elements.

To conclude, the offense of second-degree methamphetamine trafficking under HRS § 712-1240.8 has two elements: (1) distribution of an object (conduct) and (2) the object is methamphetamine in any amount (attendant

---

[13]    Interpreting the meaning of a statute by relying in part on another related statute is an accepted interpretive practice under the well-settled canon that "[l]aws in pari materia, or upon the same subject matter, shall be construed with reference to each other.  What is clear in one statute may be called upon in aid to explain what is doubtful in another." State v. Alangcas, 134 Hawai'i 515, 527, 345 P.3d 181, 193 (2015) (quoting State v. Kamana'o, 118 Hawai'i 210, 218, 188 P.3d 724, 732 (2008)); accord HRS § 1-16 (1993).

circumstances).[14]  The offense has no "results of conduct"

element.  Cf. Valentine, 93 Hawai'i at 207, 998 P.2d at 487.

## B. The Applicable State of Mind as to Each Element of the Charged Offense

HRS § 702-204 provides that "a person is not guilty of

an offense unless the person acted intentionally, knowingly,

recklessly, or negligently, as the law specifies, with respect

to each element of the offense."  HRS § 702-204 (1993).  As

stated, HRS § 712-1240.8 provides, "A person commits the offense

of methamphetamine trafficking in the second degree if the

person knowingly distributes methamphetamine in any amount."

HRS § 712-1240.8(1) (Supp. 2013) (repealed 2016) (emphasis

added).  Thus, "the law specifies," HRS § 702-204, that a person

must act "knowingly," HRS § 712-1240.8, with respect to the

elements of second-degree methamphetamine trafficking.  HRS §

702-206 defines "knowingly" as follows:

> (a) A person acts knowingly with respect to his conduct
> when he is aware that his conduct is of that nature.
>
> (b) A person acts knowingly with respect to attendant
> circumstances when he is aware that such circumstances
> exist.
>
> (c) A person acts knowingly with respect to a result of his
> conduct when he is aware that it is practically certain
> that his conduct will cause such a result.

---

[14]   The elements discussed will not be identical to situations involving a non-consummated sale of an illegal drug that occurs in the course of an offer or agreement to sell such drug.  See supra note 11.  We do not further elaborate on the material elements that must be charged in such situations because they are not pertinent to the facts of this case.

HRS § 702-206(2) (1993).

Applying the statutory definition of "knowingly" to the conduct element and the attendant circumstances element of second-degree methamphetamine trafficking, the State must prove beyond a reasonable doubt that the person charged (1) is aware that he or she engaged in an act of distribution of an object and (2) is aware that the object distributed constitutes methamphetamine in any amount.

### C. The Circuit Court's Jury Instruction on Second-Degree Methamphetamine Trafficking was Prejudicially Insufficient

We now consider whether the circuit court's instruction on second-degree methamphetamine trafficking was correct in light of the elements discussed and the state of mind that must be applied as to each element.

> It is the duty of the circuit judge to see to it that the case goes to the jury in a clear and intelligent manner, so that they may have a clear and correct understanding of what it is they are to decide, and he or she shall state to them fully the law applicable to the facts.

State v. Culkin, 97 Hawai'i 206, 214–15, 35 P.3d 233, 241–42 (2001) (quoting State v. Kinnane, 79 Hawai'i 46, 50, 897 P.2d 973, 977 (1995)).

The circuit court's instruction, given over the objection of both Bovee and the State, provided as follows:

> The Defendant, Charles L. Bovee, is charged with the offense of Methamphetamine Trafficking in the Second Degree.

> A person commits the offense of Methamphetamine Trafficking in the Second Degree if he knowingly distributes methamphetamine in any amount.
>
> There is one material element of the offense of Methamphetamine Trafficking in the Second Degree, which the prosecution must prove beyond a reasonable doubt.
>
> The element is as follows:
>
> 1. That on or about the 26th day of November, 2013, in the City and County of Honolulu, State of Hawaii, the Defendant distributed methamphetamine in any amount, <u>and he was aware that he was doing so</u>.
>
> "To distribute" means to sell, transfer, prescribe, give, or deliver to another, or to leave, barter, or exchange with another, or to offer or agree to do the same.

(Emphasis added.)

The circuit court's instruction states that there is but one material element, when in fact, as discussed <u>supra</u>, there are two. Based on the language of the instruction, the circuit court incorrectly combined the two material elements of second-degree methamphetamine trafficking into one. <u>See</u> <u>State v. Aganon</u>, 97 Hawaiʻi 299, 303, 36 P.3d 1269, 1273 (2001) (concluding that it was error to combine two elements of the offense into one and instructing the circuit court to separately list the elements on remand). In addition, the circuit court's instruction is ambiguous because the jury could have interpreted it as requiring the application of the "knowing" state of mind only to "distribute," the conduct element, and not to the attendant circumstances element. The instruction indicated that the single element of the offense was that "the Defendant

22

distributed methamphetamine in any amount, and <u>he was aware that</u> <u>he was doing so</u>." (Emphasis added.) The term "doing" is commonly understood as referring to "the act of performing or executing" an action.[15] Thus, awareness that one is "doing" something is ordinarily understood to require awareness that one is "performing or executing" a particular "conduct." Since the wording of the circuit court's instruction was predominantly centered on the requirement of "doing," the instruction may have conveyed to the jury that the State's burden was solely to prove Bovee's awareness that he was engaged in the distribution (e.g., transferring, selling, delivering, etc.) of the object involved in this case.

Accordingly, the court's instruction may have been understood as having only one requirement: that Bovee was aware that he was distributing an object. And this is supported by the circuit court's statement that there was only one element, "conduct":

> You see what I do here. I obviate the need to give them the definitions of knowingly. I obviate the need for the jury to figure out whether the element is conduct, attendant circumstances, or result of conduct.
>
> I think <u>it's clearly a conduct element</u>.
>
> . . . .

---

[15] <u>Doing</u>, <u>Merriam-Webster</u>, https://www.merriam-webster.com/dictionary/doing (last visited May 3, 2017).

> I <u>incorporate the knowing state of mind, and the definition of knowing as to conduct</u>, right into the element.

(Emphases added.) Thus, the circuit court's instruction was meant to apply the "knowing" state of mind only to the conduct element (to "distribute") of second-degree methamphetamine trafficking and not to the attendant circumstances element (i.e., "methamphetamine in any amount"). Simply stated, the instructions did not make it clear that Bovee's awareness applied both to his conduct and to the character and nature of the object he was distributing. See Aganon, 97 Hawai'i at 303—04, 36 P.3d at 1273—74 (explaining that the jury instruction was erroneous because it allowed the jury to find the defendant guilty based on the satisfaction of just one of the elements of the offense so long as the element is accompanied by the requisite state of mind); see also Culkin, 97 Hawai'i at 214-15, 35 P.3d at 241-42 (holding that the adequacy of a jury instruction is measured by determining whether the instruction clearly and correctly specifies what the jury must decide).

The absence of any instruction regarding the definition of "knowingly" exacerbated the ambiguity in the circuit court's instruction. The circuit court stated that it "incorporate[d] the knowing state of mind, and the definition of knowing as to conduct, right into the element." The court,

24

therefore, did not clearly apprise the jury of the fact that, as to attendant circumstances, "[a] person acts knowingly . . . when he is aware that such circumstances exist."  HRS § 702-206(2)(b) (1993).  Thus, the circuit court's instruction was "prejudicially insufficient" because it was inconsistent with and did not clearly conform to the requirements of HRS § 702-204, which requires proof that "the person acted intentionally, knowingly, recklessly, or negligently, as the law specifies, with respect to each element of the offense."  HRS § 702-204 (1993) (emphasis added); Aganon, 97 Hawai'i at 302, 36 P.3d at 1272.[16]  To this extent, the instruction did not provide members of the jury with "a clear and correct understanding of what it is they are to decide."  Culkin, 97 Hawai'i at 214-15, 35 P.3d at 241-42 (quoting Kinnane, 79 Hawai'i at 50, 897 P.2d at 977).

The ICA, relying on Aganon, concluded that the "jury instruction was substantively correct and therefore was not prejudicially insufficient, erroneous, inconsistent, or misleading."  The ICA reasoned that "in Aganon, even where the trial court improperly conflated the conduct and result material

---

[16]    We note that the circuit court's incorporation of the applicable state of mind into its enumeration of the material elements of the charged offense was commendable as it sought to assist the jury's understanding of the requirements for proof of an offense.  However, in this case, the court's integration of the state of mind into the elements of the offense was incomplete.

elements of murder in the second degree, the supreme court observed that 'the [jury instruction] error did not adversely affect Aganon's substantial rights.'" Id. (alteration in original) (quoting Aganon, 97 Hawai'i at 303, 36 P.3d at 1273). The ICA's reading of Aganon is incorrect. At the outset, Aganon determined that the circuit court's instruction was erroneous and prejudicial because it allowed the jury to find the defendant "guilty based on only one element of the offense so long as it was accompanied by the requisite state of mind." Aganon, 97 Hawai'i at 303, 36 P.3d at 1273. The erroneous instruction, the court continued, was aggravated by the circuit court's response to a jury communication--that conviction may be had simply by finding that the applicable state of mind is present as to any one element (and not as to all elements) of the offense. Id. The Aganon court, invoking plain error, vacated the conviction for second-degree murder and remanded the case for a retrial. Id. at 303-04, 36 P.3d at 1273-74.

In addition, this court determined in Aganon that the circuit court's conflation of the "conduct" and "result" elements of second-degree murder was erroneous and instructed the circuit court to separately list these two distinct elements

on remand.  Id. at 303, 36 P.3d at 1273.[17]    Thus, contrary to
the ICA's determination, Aganon reinforces the conclusion that
the circuit court's instruction in this case is prejudicially
insufficient and erroneous because, similar to Aganon, the
instruction here conflated the "conduct" and "attendant
circumstances" elements of the offense and was ambiguous in that
it could have advised the jury that the satisfaction of the
"conduct" element, when accompanied by the "knowing" state of
mind, was sufficient to convict Bovee.  See id. at 303-04, 36
P.3d at 1273-74.

### D. The Erroneous Jury Instruction Was Not Harmless Beyond A Reasonable Doubt

A determination that the circuit court's instruction
was prejudicially insufficient and had the potential to mislead
the jury does not end the analysis, for the "question [is]
whether there is a reasonable possibility that [the] error might
have contributed to conviction."  State v. Frisbee, 114 Hawaiʻi
76, 79-80, 156 P.3d 1182, 1185-86 (2007) (quoting State v.
Gonsalves, 108 Hawaiʻi 289, 292-93, 119 P.3d 597, 600-01 (2005)).
"If there is such a reasonable possibility in a criminal case,

---

[17]    This court's conclusion in Aganon that the "jury instructions
were consonant with the spirit of HRS § 702-204" was made with respect to the
circuit court's characterization of the "requisite state of mind as a
'material element'" and not with respect to the circuit court's conflation of
two distinct elements of second-degree murder, as the ICA's SDO appears to
state.  Aganon, 97 Hawaiʻi at 303, 36 P.3d at 1273.

27

then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside." Id. In this case, a central part of Bovee's defense was that he was not aware of the character of the object that he distributed; that is, he did not know that the object was methamphetamine.

This defense theory was developed throughout the jury trial. In his opening statement, defense counsel stated that Apilado wanted Bovee "to basically be a mule"--someone who would carry the money and the box that contained methamphetamine. During his testimony, Bovee stated that he was not aware that he was participating in a narcotics transaction or that the object he received from Cory and delivered to Officer Pacarro contained or constituted methamphetamine. In his closing argument, defense counsel underscored Bovee's testimony that he was not aware that the cigarette box Cory handed him and later delivered to Officer Pacarro contained methamphetamine.

The circuit court's instruction, however, did not clearly inform the jury that the "knowing" state of mind applied to the attendant circumstances element of the charged offense, i.e., that the object distributed constituted methamphetamine in any amount. The instruction had at least the potential of conveying to the jury that the State was not required to prove

Bovee's awareness of the fact that the object he distributed was methamphetamine.  Accordingly, the circuit court's ambiguous instruction regarding second-degree methamphetamine trafficking, coupled with the absence of the definition of the "knowing" state of mind, was not harmless beyond a reasonable doubt.[18]  Cf. State v. Aganon, 97 Hawai'i 299, 303-04, 36 P.3d 1269, 1273-74 (2001) (concluding that the erroneous instruction was not harmless because it required the jury to find the defendant "guilty based on only one element of the offense so long as it was accompanied by the requisite state of mind"); State v. Valentine, 93 Hawai'i 199, 208, 998 P.2d 479, 488 (2000) (concluding that the requisite state of mind for the offense of attempted prohibited possession of a firearm is "intentionally" and holding that the circuit court's instruction, which allowed the jury to convict the defendant upon a "knowing" state of mind, was not harmless beyond a reasonable doubt).[19]

---

[18]   This holding similarly applies to the circuit court's jury instruction on the included offense of promoting a dangerous drug in the third degree.

[19]   The ICA determined that "[t]he jury clearly disbelieved Bovee's testimony as to his knowledge of the methamphetamines within the cigarette pack and found him guilty of knowingly distributing those methamphetamines." However, as discussed, the circuit court's instruction had at least the potential of leading the jury to believe that it was not required to find beyond a reasonable doubt that Bovee was aware that the object he was distributing was methamphetamine in any amount.  Under such circumstances, it cannot be readily concluded that the jury "clearly disbelieved" Bovee's defense.

### E. Act 231 and the ICA's Failure to Remand the Case for Resentencing

Bovee further contends that the ICA erred in not remanding his case for resentencing pursuant to Act 231 of the Session Laws of Hawaii 2016.  Act 231 repealed HRS § 712-1240.8 (Supp. 2013) (repealed 2016) (methamphetamine trafficking in the second degree) under which Bovee was charged and convicted. 2016 Haw. Sess. Laws Act 231, § 56 at 765.  Act 231 also amended HRS § 712-1242(1)(c) (Supp. 2016) (promoting a dangerous drug in the second degree) in order to expand its application to methamphetamine distribution.[20]  The practical effect of the repeal of HRS § 712-1240.8 and the amendment to HRS § 712-1242(1)(c) was to transfer the offense previously prohibited by HRS § 712-1240.8 to HRS § 712-1242(1)(c).

The transfer to HRS § 712-1242(1)(c) provides greater discretion to a court rendering a sentence for a defendant convicted of offenses involving methamphetamine distribution. Under HRS § 712-1240.8, the sentence for second-degree methamphetamine trafficking was "an indeterminate term of imprisonment of ten years with a mandatory minimum term of imprisonment of not less than one year and not greater than four

---

[20]     Act 231, § 55 amended the language of HRS § 712-1242(1)(c) as follows: "(c) Distributes any dangerous drug in any amount[, except for methamphetamine]."  (Ramseyer formatted.)

years and a fine not to exceed $10,000,000," with longer mandatory minimum sentences prescribed for repeat offenders. HRS § 712-1240.8(3). After the incorporation of second-degree methamphetamine trafficking into HRS § 712-1242(1)(c), which remains classified as a class B felony (see HRS § 712-1242(2)), a person convicted of the offense may now be sentenced to a term of probation under HRS § 706-620 (Supp. 2016) or to a maximum length of imprisonment of ten years under HRS § 706-660,[21] with the minimum term to be set by the Hawai'i paroling authority, see HRS §§ 706-660(1)(a) (Supp. 2013), 706-669 (2014). Because Act 231 reclassified distribution of methamphetamine in any amount as a class B felony with the standard monetary penalties, the fine that may be imposed has also now been capped at $25,000 (instead of $10,000,000). HRS §§ 706-640(1)(b) (2014), 706-641 (2014).

Section 70 of Act 231 "provide[s] that [sections] 54, 55, and 56 shall apply to offenses committed before the effective date of this Act." (Emphasis added.) If such an offense was "[o]riginally charged as a violation of [HRS §] 712-1240.8, . . . for which the defendant has been convicted on a plea or verdict and sentenced but for which no final judgment on

---

[21] A defendant may also be subject to repeat offender sentencing by the court in accordance with HRS § 706-606.5 (Supp. 2016).

appeal has been entered," section 70 of Act 231 requires the appellate court to do either of the following: "(a) Remand the case for sentencing pursuant to this Act if the judgment is affirmed on appeal or if the sentence is vacated; or (b) Remand the case for further proceedings pursuant to this Act if the judgment is reversed and remanded for further proceedings." 2016 Sess. Laws Act 231, § 70(4) at 776.

In this case, Bovee committed the offense before the July 1, 2016 effective date of Act 231 and was charged pursuant to HRS § 712-1240.8; he was convicted and sentenced by the circuit court; and the ICA's judgment on appeal was not entered until January 6, 2017--after the effective date of Act 231. Given these facts, and because the ICA affirmed the judgment of conviction, Bovee is correct that section 70(4)(a) of Act 231 required the ICA to "[r]emand the case for [re]sentencing." 2016 Sess. Laws Act 231, § 70(4)(a) at 776. The ICA did not do so, and this contradicts the mandate of section 70 of Act 231. See 2016 Sess. Laws Act 231, § 70(4)(a) at 776.

However, the requirement under section 70 of Act 231 for an appellate court to remand a case for resentencing is predicated on the appellate court's affirmance of the circuit court's judgment. Here, the ICA's affirmance of the judgment of conviction is erroneous, and the disposition of this case is the

vacatur of the judgments of the ICA and the circuit court and remand to the circuit court for a new trial. Thus, there is no predicate for the application of the remand-for-resentencing provision of Act 231, section 70(4)(a), and this provision is not triggered. However, because the judgments of the ICA and the circuit court are vacated and the case is remanded, section 70(4)(b) of Act 231 requires this court to "[r]emand the case for further proceedings pursuant to" Act 231. 2016 Sess. Laws Act 231, § 70(4)(b) at 776.[22] Thus, on remand, Bovee may be retried under HRS § 712-1242(1)(c) (promoting a dangerous drug in the second degree) and not under the now-repealed HRS § 712-1240.8 (methamphetamine trafficking in the second degree).

## V. CONCLUSION

Because the circuit court's erroneous instruction on the offense of second-degree methamphetamine trafficking is not harmless beyond a reasonable doubt, the ICA's January 6, 2017 Judgment on Appeal and the judgment of conviction of the circuit

---

[22] Section 70 of Act 231 states that, where an offense was "[o]riginally charged as a violation of [HRS §] 712-1240.8, . . . for which the defendant has been convicted on a plea or verdict and sentenced but for which no final judgment on appeal has been entered," an appellate court must "[r]emand the case for further proceedings pursuant to this Act if the judgment is reversed and remanded for further proceedings." 2016 Sess. Laws Act 231, § 70(4)(b) at 776 (emphasis added). We interpret the word "reverse" to mean "vacate" as the latter is defined by Hawai'i Rules of Appellate Procedure (HRAP) Rule 35(e) (2010) (providing that "the phrase 'vacate and remand' indicates the litigation continues in the court or agency in accordance with the appellate court's instruction").

court are vacated, and this case is remanded to the circuit

court for further proceedings pursuant to Act 231.

Randall K. Hironaka
for petitioner

Stephen K. Tsushima
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

