**\*\*\* NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER \*\*\***

**Electronically Filed
Supreme Court
SCWC-22-0000129
20-MAY-2024
04:11 PM
Dkt. 15 MO**

SCWC-22-0000129

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

_____

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

PATRICK H. OKI,
Petitioner/Defendant-Appellant.

_____

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-22-0000129 and CAAP-21-0000278 (consolidated);
CR. NO. 1PC151000488)

MEMORANDUM OPINION
(By: Recktenwald, C.J., Circuit Judge Castagnetti, in place of
Ginoza, J., recused, and Circuit Judge Chang, in place of
Devens, J., recused, with McKenna, J. dissenting, with whom
Eddins, J., joins)

## I.    INTRODUCTION

This appeal arises from Patrick H. Oki's conviction
and sentence for fraudulently obtaining money from a local
accounting firm.  Oki was convicted of three counts of first-
degree theft, one count of second-degree theft, three counts of
money laundering, two counts of use of a computer in the

commission of the thefts in the first degree charged in counts 2 and 3 (sometimes "use of a computer" or "counts 8 and 9"), and four counts of second-degree forgery. He was sentenced to twenty years of incarceration for the use of a computer counts - the longest of his sentences, all of which were to be served concurrently. Oki was also ordered to pay restitution of $440,158.54, pursuant to statute during his incarceration, and at a rate of at least $30 per month after his release.

In his application for writ of certiorari, Oki raises three issues.

First, Oki challenges his convictions for use of a computer in the commission of a separate theft in counts 8 and 9 as illegal because after he was charged with the offenses, but before his trial and sentencing, the statutory subsection under which he was convicted was repealed. The act repealing the subsection, Act 231, contained a savings clause, which provided in relevant part, "[t]his Act does not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun before its effective date." 2016 Haw. Sess. Laws Act 231, § 70 at 775.

Second, Oki challenges the payment schedule in his restitution order. The Intermediate Court of Appeals (ICA) held that Oki waived any challenge to the time and manner of restitution payment. Oki disagrees and requests this court

clarify the difference between waiver, which forecloses plain error review, and forfeiture, under which plain error review still applies. Oki further contends that the circuit court's restitution payment schedule was plainly erroneous because it failed to consider Oki's ability to pay in setting the manner and time of payment pursuant to Hawai'i Revised Statutes (HRS) § 706-646(3) (Supp. 2017).

Third, Oki argues the ICA erroneously held that its remand mandate in a prior appeal by Oki "precluded" the circuit court from revisiting the amount of restitution on remand. The circuit court had initially ordered Oki to pay restitution to the firm, including, but not limited to, four of his former partners in their capacity as partners; the ICA vacated as to that order only and remanded to the circuit court with directions to order restitution directly to the firm itself. On remand, Oki filed a motion for a restitution hearing and study, arguing that the circuit court needed to recalculate restitution entirely because the record lacked evidence of the victim's "reasonable and verified losses" pursuant to HRS § 706-646(2) (2014). The circuit court denied the motion.

We resolve Oki's issues as follows. With respect to the first issue, this case requires a straightforward application of our precedent in State v. Reis, 115 Hawai'i 79, 165 P.3d 980 (2007). There, we interpreted a savings clause

that contained the same language as Act 231, which is at issue here.  We concluded that the defendant in Reis did not get the benefit of the ameliorative amendments contained in the applicable statute, because (1) her prosecution had begun before the effective date of the statute, and (2) she had committed the crime — and thus "incurred" the penalty — before that date.  Those are exactly the same circumstances as Oki.  Therefore, we affirm Oki's convictions for use of a computer in the commission of a separate theft because the "proceedings" of his case began before Act 231's effective date, and he also committed the crimes before those crimes were statutorily repealed.

Second, the ICA correctly concluded that Oki waived his claim as to the restitution payment schedule, and the circuit court's restitution payment schedule was not plainly erroneous.  Contrary to Oki's contention, the circuit court expressly considered Oki's ability to pay in setting the manner and time of payment pursuant to HRS § 706-646(3).

Finally, the ICA did not hold that its remand mandate "precluded" the circuit court from reconsidering the restitution amount on remand; rather, the ICA correctly held that the circuit court did not err in denying Oki's motion for a restitution hearing and study.  The restitution amount had already been determined based on the "reasonable and verified losses" of the accounting firm and the circuit court's decision

"closely adhere[d]" to the true intent and meaning of the ICA's remand mandate. See HRS § 706-646(2); In re Haw. Elec. Light Co. (In re HELCO), 149 Hawai'i 239, 241, 487 P.3d 708, 710 (2021).

We therefore affirm the ICA.

## II. BACKGROUND

### A. Factual Background

Oki's charges are based on his alleged conduct carrying out four fraudulent schemes between 2011 and 2014 as managing principal partner of local accounting firm Spire Hawai'i, LLP (Spire), formerly PKF Pacific Hawai'i, LLP (PKF). State v. Oki (Oki I), No. CAAP-18-0000501, 2020 WL 3027401, at *1 (Haw. App. June 5, 2020) (mem. op.). Oki's former partners at Spire, Lawrence Chew, Deneen Nakashima, Dwayne Takeno, and Trisha Nomura (collectively, "former partners") began to suspect Oki of stealing money from PKF and reported him to the police in 2014. Id.

### B. Initial Circuit Court Trial Proceedings[1]

On April 1, 2015, Oki was indicted for thirteen charges: three counts of Theft in the First Degree, in violation of Hawai'i Revised Statutes (HRS) §§ 708-830.5(1)(a) and -830(2); one count of Theft in the Second Degree, in violation of HRS §§

---

1    The Honorable Rom A. Trader presided.

5

708-831(1)(b) and -830(2); three counts of Money Laundering, in violation of HRS § 708A-3(1)(a)(ii)(A); two counts of Use of a Computer in the Commission of a Separate Crime, in violation of HRS § 708-893(1)(a) (Counts 8 and 9); and four counts of Forgery in the Second Degree, in violation of HRS § 708-852.

With respect to counts 8 and 9 of the indictment, the two use of a computer charges attendant to the thefts in the first degree charges in counts 2 and 3, HRS § 708-893(1)(a) provided in relevant part, "(1) A person commits the offense of use of a computer in the commission of a separate crime if the person: (a) Intentionally uses a computer to obtain control over the property of the victim to commit theft in the first or second degree." Subsection (2) of HRS § 708-893 then provided and still provides that the "[u]se of a computer in the commission of a separate crime is an offense one class or grade . . . greater than the offense facilitated. Notwithstanding any other law to the contrary, a conviction under this section shall not merge with a conviction for the separate crime."

Before trial, Oki filed a motion to dismiss the use of a computer in the commission of a separate theft charges, counts 8 and 9; he then filed an amended motion. He argued that the use of a computer charges were defective because they (1) involved penalties amounting to cruel "and/or" unusual

punishment;[2] (2) violated his rights to due process and equal protection; (3) were not rationally related to a legitimate public purpose; (4) were overbroad as a matter of law; and (5) did not apply to this case pursuant to rules of statutory construction.

As support for his cruel and unusual punishment argument, Oki cited House Bill 2561 of 2016, which at that time, had been approved by the legislature but had not yet become law. Oki noted that the bill, which later became Act 231 of 2016, would completely repeal the subsection of HRS § 708-893 upon which Oki's use of a computer charges were based, which was HRS § 708-893(1)(a). Act 231 became law on July 11, 2016, with an effective date of July 1, 2016, after Oki was charged but before he was tried and sentenced. 2016 Haw. Sess. Laws Act 231, § 72 at 776.

The circuit court denied Oki's motion to dismiss. With respect to Act 231, the circuit court relied on the act's savings clause, which provides in part, "SECTION 70. This Act does not affect rights and duties that matured, penalties that

---

2     The Hawai'i Constitution's language differs from that of the United States Constitution. The Eighth Amendment of the latter bans "cruel and unusual punishment," but our article I, section 12 prohibits the infliction of "cruel or unusual punishment."

7

were incurred, and proceedings that were begun before its effective date."[3]  2016 Haw. Sess. Laws Act 231, § 70 at 775.

On November 30, 2016, the circuit court entered its Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion to Dismiss Counts 8 and 9 of the Indictment (FOFs/COLs/Order denying motion to dismiss).  The circuit court concluded Act 231 did not affect Oki's case because Oki's "proceedings," which it interpreted as his prosecution, began before Act 231 was enacted.

Following a bench trial, Oki was convicted of all charges except that one count of first-degree theft in violation of HRS §§ 708-830.5(1)(a) and -830(2) was reduced to the lesser-included charge of second-degree theft in violation of HRS § 708-831(1)(b) (Supp. 2012) and -830(2) (Supp. 2005).

The circuit court then sentenced Oki to concurrent sentences of ten years each for counts 1 through 3, five years for count 4, ten years each for counts 5 through 7, twenty years each for counts 8 and 9, and five years each for counts 10 through 13, with credit for time served.  The circuit court entered an initial judgment of conviction and sentence on October 17, 2017; after determining restitution, it entered an amended judgment of conviction and sentence on May 24, 2018.

---

3    The savings clause goes on to exempt three sections of the act involving drug-related offenses (specifically, methamphetamine).  2016 Haw. Sess. Laws Act 231, § 70(2) at 775-76.

The State filed a motion for restitution asserting the former partners were direct victims to whom Oki owed restitution under HRS § 706-646.  Oki opposed the motion and requested no restitution or, in the alternative, that restitution be ordered to be paid to Spire.  Spire also submitted letters to the circuit court requesting restitution as the victim of Oki's theft crimes.

The circuit court granted the State's motion for restitution and ordered Oki to pay $440,178.54 in restitution.

As to the time and manner of payment, the circuit court stated:

> Restitution is to be paid as provided by law while Mr. Oki is incarcerated and thereafter at a rate – at the bare minimum it would need to be $30 a month.  I certainly full well recognize based upon Mr. Oki's income earning ability, as reflected in this case but also in the presentence report, and while I certainly appreciate that it has been adversely impacted by his conviction in this case, at this point I don't have, I believe, sufficient information to know what would be reasonable beyond that $30 a month.
>
> But if either side wishes to revisit that, and most likely it would be the State, to seek an increase in the amount ordered – but that would depend upon Mr. Oki's ability to earn, his income earning capacity – then the Court's more than willing to consider that at a future date.

The circuit court also entered a free-standing restitution order ordering Oki to pay $440,158.54 in restitution to PKF, "including but not limited to Lawrence Chew, Deneen Nakashima, Dwayne Takeno[, and] Trisha Nomura in their capacities as [former] partners of PKF."  Restitution was to be

9

paid as provided by HRS § 353-22.6 (Supp. 2016)[4] during Oki's incarceration and "thereafter at a rate of at least $30.00 per month."

## C. **Oki I**

During the first appeal, Oki asserted:

(1) the circuit court erred in denying Oki's Motion to Suppress Evidence from Warrantless Search; (2) the circuit court erred in denying Oki's Motion to Suppress Evidence from Unlawful Warrant; (3) the circuit court erred in denying Oki's [Motion to Dismiss] Counts 8 & 9; (4) there was insufficient evidence that Oki intended to permanently deprive the partnership of any property; and (5) the circuit court erred in granting the State's Motion for Restitution.

Oki I, 2020 WL 3027401, at *10. The State cross-appealed and contended "the circuit court erred in refusing to order Oki to pay restitution directly to Chew, Nakashima, Takeno, and Nomura, in their capacities as the sole partners of PKF at the time of Oki's offenses." Id.

In its memorandum opinion, the ICA affirmed, except as to restitution. Oki I, 2020 WL 3027401, at *25. The ICA remanded to the circuit court to order restitution "directly to

---

4    HRS § 353-22.6 provided,

The director of public safety shall enforce victim restitution orders against all moneys earned by the inmate or deposited or credited to the inmate's individual account while incarcerated. Notwithstanding any law or order to the contrary, the amount deducted shall be twenty-five per cent of the total of all moneys earned, new deposits, and credits to the inmate's individual account. The moneys intended for victim restitution shall be deducted monthly and paid to the victim once the amount reaches $25, or annually, whichever is sooner. This section shall not apply to moneys earned on work furlough pursuant to section 353-17.

10

Spire" rather than to PKF, including but not limited to the former partners in their capacity as partners.  Id.

The ICA's memorandum opinion also included a footnote addressing Act 231:

> Oki also contends that the legislature's decision to remove theft from the purview of HRS § 708-893 in 2016 supports his argument that the statute imposed cruel and unusual punishment.  See 2016 Haw. Sess. Laws Act 231, § 42 at 758-59.  Oki specifically points to House Bill 2561, which led to the removal of theft in the first or second degree as underlying offenses that would subject a person to the separate offense of Use of a Computer and enhanced penalties.  See H.B. 2561, 28th Leg., Reg. Sess. (2016). House Bill 2561 recommended amending HRS § 708-893 by "[r]epealing a provision that subjects a person to a separate charge and enhanced penalty for using a computer to commit an underlying theft crime because it seems unduly harsh, given the prevalence of 'smart phones' and other computing devices."  Id. (emphasis added).  Oki argues that the legislature's description of the provision as "unduly harsh" lends support to his argument that the statute unconstitutionally imposes cruel and unusual punishment.
>
> We do not agree that the legislature's characterization of the provision as "unduly harsh" indicates an acknowledgment that the statute violated the protection against cruel and unusual punishment.  The Act contained a savings clause, providing that the repeal of the provision held only proactive effect and did not have any retroactive effect:  "This Act does not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun before its effective date[.]" 2016 Haw. Sess. Laws Act 231, § 70 at 775.  If the legislature intended to, it could have made the law have retroactive effect, but it did not.

Oki I, 2020 WL 3027401, at *18 n.22.

Oki applied for certiorari review, raising four questions.  Relevant here, the third was whether the ICA erred in affirming the denial of the motion to dismiss the computer crimes charges that had been repealed as "unduly harsh" and constituting cruel and unusual punishment in violation of the federal and state constitutions.  This court denied certiorari

11

over Justice Wilson's dissent. State v. Oki, No. SCWC-18-
0000501, 2020 WL 6115119 (Haw. Oct. 16, 2020) (order rejecting
app. for cert.).

**D.    Remand[5]**

On remand, Oki filed a motion for restitution hearing
and study, which the State opposed.  The circuit court denied
the motion.  At the hearing on the motion, the circuit court
indicated it was constrained to closely follow the ICA's
directive on remand:

> The court notes that the discussion that was . . .
> reflected in the ICA's opinion did indicate that there was
> no challenge to the total amount of restitution, but the
> challenge was to the manner in which restitution should be
> collected or distributed.
>
> Also it noted that all parties agreed that PKF now
> exists . . . as Spire . . . .
>
> It concluded therefore after determining that the
> partners[,] although identified as victims[,] that that
> only exists because of their relationship with PKF, but
> that the actual victim and the sole victim was PKF, and
> therefore they determined that although there might be some
> civil proceeding, that this court should change it or – it
> would come back to this court for the purpose of ordering
> restitution directly to Spire, the entity formerly known as
> PKF.
> I understand the argument that the defendants are
> making saying that well now everything is changed.
> However, I believe that [the State] is correct, there is a
> very specific order by the ICA that says, and that's why I
> started with this quote, this matter is remanded to the
> circuit court to order restitution directly to Spire, the
> entity formerly known as PKF.  It doesn't tell me that I
> need to make other hearings to determine if restitution
> should be different based on the finding that the four
> partners were not the direct victim.  The court is
> constrained to do any differently.

---

5    The Honorable Catherine H. Remigio presided on remand.

It entered a second amended judgment, filed February 10, 2021 (judgment) and an amended restitution order, filed February 11, 2021 (restitution order).  The circuit court ordered Oki to pay restitution directly to Spire, in the same amount and time and manner as in the initial restitution order.  The circuit court entered its Order Denying Defendant's Motion for Restitution Hearing and Study on March 22, 2021.

In March 2021, Oki filed a motion to correct illegal sentence.  Oki asserted the circuit court had the power to correct Oki's illegal sentence in counts 8 and 9 pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 35(a) (eff. 2003), which provides in part that "[t]he court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner" upon a motion filed within 90 days of the sentence's imposition.

Oki asserted his sentence for counts 8 and 9 was illegal because the offense of the use of a computer in the commission of a separate theft, HRS § 708-893(1)(a), was repealed before his trial and sentencing.  The State opposed Oki's motion to correct illegal sentence.

The circuit court held a hearing on the motion to correct illegal sentence on April 27, 2021, and took the matter under advisement.  On March 8, 2022, the circuit court entered

13

its findings of fact, conclusions of law, and order denying defendant's motion to correct illegal sentence.

The circuit court indicated it had already ruled Act 231 did not bar Oki's prosecution, conviction, and sentence for counts 8 and 9 in the FOFs/COLs/Order denying motion to dismiss, and the ICA had also already acknowledged Act 231 did not have retroactive effect and affirmed the circuit court in that respect. Citing Wong v. City & Cnty. of Honolulu, 66 Haw. 389, 665 P.2d 157 (1983), the circuit court concluded those rulings were the "law of the case" and that it could find no "cogent reason" to vacate the convictions that were upheld on appeal.

The circuit court further concluded Oki's illegal sentence argument was barred by the doctrine of collateral estoppel and res judicata.[6] The circuit court also stated that because Oki had already conceded Act 231 could not serve as a basis for dismissal of counts 8 and 9, he was now barred from arguing the opposite.

The circuit court concluded Oki had waived any argument based on State v. Avilla, 69 Haw. 509, 750 P.2d 78 (1988), but also found it to be without merit. The circuit

---

6     This conclusion is wrong, as res judicata and collateral estoppel principles only apply after "final judgment" has entered and under Hawai'i law, there is no final judgment until all appeals have been exhausted. See Saplan v. U.S. Bank Nat'l Ass'n, No. SCWC-17-0000847, at *20-21 n.8 (Haw. May 20, 2024) (citing E. Sav. Bank, FSB v. Esteban, 129 Hawai'i 154, 160, 296 P.3d 1062, 1068 (2013)).

court determined the legislature did not intend to give retroactive effect to the statutory amendment deleting use of a computer because it only provided exceptions to the savings clause for the drug-related offenses.  It agreed with the State that because Act 231 was "comprehensive legislation," Oki's case was more similar to Reis than Avilla.

**E.   Appellate Proceedings**

The ICA affirmed the circuit court's judgment and restitution order and affirmed in part the order denying Oki's motion to correct illegal sentence.

The ICA held the circuit court did not err in ordering restitution to Spire without another restitution hearing and a restitution study.  The ICA pointed out the Oki I memorandum opinion expressly noted that neither party had challenged the total amount of restitution, but merely the manner in which the restitution should be distributed; the ICA had directed the circuit court on remand "to order restitution directly to Spire" but affirmed the judgment "in all other respects."  The ICA concluded that on remand, the circuit court closely adhered to "the true intent and meaning" of its Oki I mandate.  (Quoting In re HELCO, 149 Hawaiʻi at 241, 487 P.3d at 710.)

As to the time and manner of restitution payment, the ICA held Oki had waived the issue because he did not raise it in

15

his first appeal nor cite to where in the record he raised it on remand.

As to the merits of the illegal sentence issue, the ICA majority indicated it turned on the meaning of the term "proceedings" in the Act 231 savings clause. The majority opined that Reis is "directly on point." The majority referred to the principle that it must presume the legislature knew the law, including Reis's interpretation of "proceedings," when enacting Act 231. It agreed with the State that construing "proceedings" to mean trial and sentencing would render superfluous the provisions of the Act 231 savings clause that provide exceptions for certain drug-related offenses.

The majority also deemed Oki's illegal sentence argument unavailing because Reis interpreted an identical savings clause to mean that a defendant incurs liability for a criminal penalty at the time they commit the offense. (Citing Reis, 115 Hawaiʻi at 93, 165 P.3d at 994.) The majority concluded that, despite the legislature's remedial purpose in repealing HRS § 708-893(1)(a), it must apply the plain meaning of "proceedings." The majority also rejected Oki's reliance on In re Estrada, 408 P.2d 948 (Cal. 1965) and State v. Tapp, 490 P.2d 334 (Utah 1971) and concluded the circuit court did not err in denying Oki's motion to correct illegal sentence.

Judge Wadsworth dissented as to the illegal sentence issue. He disagreed with the majority's conclusion that Reis is directly on point and Avilla is distinguishable. Judge Wadsworth emphasized that Reis only held that "'proceedings,' absent ambiguity arising from [the] subject matter peculiar to the legislation, means criminal prosecutions." 115 Hawai'i at 97-98, 165 P.3d at 998-99.

Judge Wadsworth opined that the repealing legislation shared relevant similarities with that in Avilla, not Reis. First, although Act 231 is broad, section 42 pertains solely to the repeal of HRS § 708-893(1)(a). Second, the express legislative purpose was to eliminate an "unduly harsh" separate charge and enhanced penalty for use of a computer. That purpose, according to Judge Wadsworth, injected ambiguity into the term "proceedings" as used in the savings clause "and applied to section 42." Thus, "[i]n this unique context, 'proceedings' can mean trial and sentencing proceedings begun after the Act's effective date for pre-effective date violations."

## F. Certiorari Proceedings

Oki argues that the ICA erred by (1) holding Reis, rather than Avilla, controls and affirming his conviction as to the use of a computer charges; (2) concluding Oki "'waived' his claim that the circuit court failed to consider his ability to

17

pay when ruling on how and when restitution would be paid;" and (3) holding "the circuit court could not revisit the amount of restitution on remand."

### III. STANDARDS OF REVIEW

**A.   Motion to Correct Illegal Sentence**

"A circuit court's denial based on a conclusion of law, of a defendant's HRPP Rule 35 motion to correct illegal sentence is reviewed de novo, under the right/wrong standard of review." State v. Canosa, 152 Hawai'i 145, 155, 523 P.3d 1059, 1069 (2023) (citing State v. Kido, 109 Hawai'i 458, 461, 128 P.3d 340, 343 (2006)).

**B.   Statutory Interpretation**

> "The interpretation of a statute is a question of law. Review is de novo, and the standard of review is right/wrong." Kimura v. Kamalo, 106 Hawai'i 501, 507, 107 P.3d 430, 436 (2005) (citation omitted). Our statutory interpretation is guided by the following principles:
>
> > First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. And fifth, in construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.
>
> Ito v. Invs. Equity Life Holding Co., 135 Hawai'i 49, 61, 346 P.3d 118, 130 (2015) (citation omitted).

18

State v. Borge, 152 Hawai'i 458, 464, 526 P.3d 435, 441 (2023).

## C. Sentencing

"The authority of a trial court to select and determine the severity of a penalty is normally undisturbed on review in the absence of an apparent abuse of discretion or unless applicable statutory or constitutional commands have not been observed." Reis, 115 Hawai'i at 83, 165 P.3d at 984 (quoting State v. Aplaca, 96 Hawai'i 17, 22, 25 P.3d 792, 797 (2001)).

## IV. DISCUSSION

## A. Illegal Sentence

On appeal, Oki challenges his convictions for use of a computer to facilitate first-degree theft as illegal because after he was charged with the offenses, but before his trial and sentencing, the statutory subsection under which he was convicted was repealed. We conclude that Reis controls and therefore affirm Oki's convictions on counts 8 and 9.

Act 231, which repealed the use of a computer offense of which Oki was convicted in counts 8 and 9, arose from an omnibus bill and amended multiple statutes in the Hawai'i Penal Code. 2016 Haw. Sess. Laws Act 231, § 70 at 733-76. Section 42 of Act 231 repealed HRS § 708-893(1)(a), the use of a computer

19

in the commission of theft offense. 2016 Haw. Sess. Laws Act 231, § 42 at 758.

The act included a savings clause, section 70, which states:

> This Act does not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun before its effective date; provided that sections 54, 55, and 56[7] shall apply to offenses committed before the effective date of this Act:
>
> (1) But not yet charged as of its effective date;
>
> (2) Originally charged as a violation of section 712-1240.7 or 712-1240.8, Hawaiʻi Revised Statutes, where the defendant:
>
>   (a) Has not yet been placed in jeopardy or convicted on a plea or verdict; and
>
>   (b) Waives any claim of denial of speedy trial rights for the period elapsing between the date of filing of the original charge and the date of filing of the new charge under this Act;
>
> (3) Originally charged as a violation of section 712-1240.7 or 712-1240.8, Hawaiʻi Revised Statutes, for which the defendant has been convicted on a plea or verdict, but not yet sentenced, in which case the defendant shall be sentenced pursuant to this Act; and
>
> (4) Originally charged as a violation of section 712-1240.7 or 712-1240.8, Hawaiʻi Revised Statutes, for which the defendant has been convicted on a plea or verdict and sentenced but for which no final judgment on appeal has been entered, in which case the appellate court shall either:
>
>   (a) Remand the case for sentencing pursuant to this Act if the judgment is affirmed on appeal or if the sentence is vacated; or
>
>   (b) Remand the case for further proceedings pursuant to this Act if the judgment is

---

7    Those sections gave trial courts greater discretion in sentencing methamphetamine offenses. See 2016 Haw. Sess. Laws Act 231, §§ 54-56 at 764-65; State v. Bovee, 139 Hawaiʻi 530, 543, 394 P.3d 760, 773 (2017).

> reversed and remanded for further
> proceedings.

2016 Haw. Sess. Laws Act 231, § 70 at 775-76.

This court has previously interpreted the "penalties that were incurred" and "proceedings that were begun" savings clause language in two cases: Avilla and Reis.

In Avilla, this court considered a savings clause substantially similar to the one at issue here. 1987 Haw. Sess. Laws Act 139, § 10 at 316 ("This Act does not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun, before its effective date."). Avilla argued that Act 139's ameliorative bail provisions should apply to his case. Id. § 8 at 314-15. Act 139 provided defendants convicted of a felony the opportunity to seek bail pending appeal in limited circumstances. Avilla was indicted before Act 139's effective date, but his appellate proceedings began after the effective date. Avilla, 69 Haw. at 511-12, 750 P.2d at 79-80. He was convicted of two felonies and then filed a motion to continue bail pending appeal. Id. at 511, 750 P.2d at 79. The circuit court denied his motion, finding that "proceedings" applied to the beginning of the prosecution, and therefore he was not eligible for the Act's ameliorative provisions. Id.

On appeal, this court rejected the circuit court's interpretation and held that "proceedings" in the context of Act

21

139 applied to bail proceedings, rather than the beginning of a prosecution. Id. at 512, 750 P.2d at 80. We held the term "proceedings" was ambiguous because it could mean prosecutions, "but within the context of the statutes regulating the release of defendants on bail, it also [could] mean bail proceedings." Id.

In Reis, a defendant pled guilty to all charged counts of drug use, drug promotion, and prostitution. Prior to her sentencing, the legislature passed Act 44, which provided that "a person convicted for the first time for any offense . . . involving [drug] possession . . . . is eligible to be sentenced to probation." 2004 Haw. Sess. Laws Act 44, § 11 at 214. Act 44 contained a specific savings clause which read "[t]his Act does not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun, before its effective date." Id. § 29 at 227. Reis argued that because her sentencing proceedings had not begun until after Act 44's passage, she should be entitled to the act's ameliorative sentencing provisions.

This court rejected her argument, concluding that "'proceedings,' absent ambiguity arising from subject matter peculiar to the legislation, means criminal prosecutions of which sentencing hearings are an inseparable component" and therefore, Reis was subject to the sentencing provisions in

place at the time the criminal prosecution against her began. Reis, 115 Hawai'i at 97–98, 165 P.3d at 998–99. We held that "proceedings" in the context of Act 44 "unambiguously means the initiation of a criminal prosecution against a defendant through a charging instrument and subsumes within its scope hearings and other procedural events that arise as a direct result of the initial charging instrument." Id. at 98, 165 P.3d at 999. In doing so, we noted the initiation of criminal proceedings through a formal felony prosecution, preliminary hearing, indictment, information, or arraignment "is the starting point of our whole system of adversary criminal justice." Id. (quoting State v. Luton, 83 Hawai'i 443, 449, 927 P.2d 844, 850 (1996)).

We then distinguished Avilla:

> Avilla, therefore, does not stand, as Reis contends, for the proposition that this court construes the language of the standard savings clause "in a manner that best effectuates the underlying legislative intent and purpose of that particular statute." We resort to legislative history only when there is an ambiguity in the plain language of the statute. [State v. ]Valdivia, 95 Hawai'i [465,] 472, 24 P.3d [661,] 668 [(2001)]. Rather, Avilla stands for the unremarkable proposition that, if a statutory amendment on a single subject addresses proceedings other than criminal prosecutions—and the numerous hearings subsumed within criminal prosecutions, including hearings on evidentiary matters, motions for reconsideration, and sentencing—so as to give rise to an ambiguity, the defendant may benefit from the amendment if doing so would comport with the intent of the legislature as reflected in the amendment's underlying legislative history.

Id. at 90, 165 P.3d at 991.

23

In Reis, we also interpreted the meaning of the savings clause "penalties that were incurred" language. Id. at 91-93, 165 P.3d at 992-94. We held that a defendant "incurs" a penalty at the time of the commission of the offense. Id.

Here, Oki asks for relief from his sentence for the use of a computer in the commission of a separate crime under HRS § 708-893(1)(a) (2014) when that sentence was imposed after Act 231 became law. Section 70 of Act 231 reads the same as the savings clauses in Reis, but notably, also provides exceptions for certain drug-related offenses. Because there is no ambiguity to the term "proceedings," and because Oki's crime was not excluded from section 70's savings language, Reis must control.

In both Reis and here, "proceedings" is not ambiguous because the relevant acts address criminal proceedings generally, rather than only one stage of the criminal proceedings, as in Avilla. In Reis, this court held that "proceedings" applied to the initiation of a criminal prosecution because there, Act 44 "[was] comprehensive legislation enacted to address the epidemic of crystal methamphetamine use in the state" that introduced new charges and adjusted sentencing provisions, amongst other changes. 115 Hawai'i at 89, 165 P.3d at 990. Here, Act 231, which repealed the use of a computer offense of which Oki was convicted in

counts 8 and 9, arose from an omnibus bill and amended multiple statutes in the Hawai'i Penal Code.

We explained in Reis that Avilla was distinguishable because Avilla focused on "a statutory amendment on a single subject address[ing] proceedings other than criminal prosecutions" generally. Id. at 90, 165 P.3d at 991. But here, Act 231 was the product of an omnibus review of the penal code that resulted in a variety of changes that applied to various stages of criminal proceedings – from the repeal of the computer-crime charges, to changes in sentencing for meth-related crimes, amongst many others. The act in Avilla solely addressed bail proceedings, thereby infusing the word "proceedings" with ambiguity because it might refer to the beginning of a prosecution or the beginning of appellate bail proceedings. See Avilla, 69 Haw. at 512–13, 750 P.2d at 80. Conversely, here, Act 231 does not focus on one stage in the criminal prosecution, and thus "proceedings" is not ambiguous. There being no ambiguity, we defer to the "standard interpretation of 'proceedings' as the initiation of a criminal prosecution." Reis, 115 Hawai'i at 90, 165 P.3d at 991.

In other words, it was clear in Reis that the "proceedings" language of the relevant bill referred to the beginning of the prosecution, while in Avilla, it was ambiguous as to whether "proceedings" referred to the initial charges or

25

to appellate proceedings.  But here, like in Reis, there is no ambiguity because Act 231 encompasses changes to criminal proceedings generally, rather than applying to only one stage of those proceedings.

This conclusion is also supported by the plain language of Act 231's savings clause, section 70.  "[T]his court must presume that the legislature meant what it said and is further barred from rejecting otherwise unambiguous statutory language."  State v. Demello, 136 Hawai'i 193, 195, 361 P.3d 420, 422 (2015) (quoting Morgan v. Plan. Dep't, Cnty. of Kaua'i, 104 Hawai'i 173, 185, 86 P.3d 982, 994 (2004)).  "[T]he legislature is presumed to know the law when enacting statutes," including this court's decisions.  Agustin v. Dan Ostrow Const. Co., 64 Haw. 80, 83, 636 P.2d 1348, 1351 (1981) ("[W]e must presume that the legislature knew of the definition we assigned to the word 'accrued'" in another case).

Here, we presume the legislature was aware of our holding in Reis, where we clearly defined "proceedings," as discussed above.  This court stated in Reis that "[t]he inclusion of a specific savings clause within the body of the amending statute demonstrates a clear legislative intent that the contents of the act do not apply retroactively."  Reis, 115 Hawai'i at 90, 165 P.3d at 991; see also id. at 90 n.19, 165 P.3d at 991 n.19.

26

The legislature clearly intended for Act 231 to apply retroactively to certain specific provisions, which did not include section 42. Specifically, it outlined that "sections 54, 55, and 56 [of Act 231] shall apply to offenses committed before the effective date of this Act." 2016 Haw. Sess. Laws Act 231, § 70 at 775. It then specified which law, either the previous statute or Act 231, should apply to which defendants. The legislature thus knew how to apply Act 231 retroactively to certain defendants at different stages of criminal proceedings. But it deliberately chose not to address defendants affected by section 42. This targeted approach to creating exceptions in the otherwise broad sweep of the savings clause is indicative of the legislature's intent. See State v. Choy Foo, 142 Hawai'i 65, 74, 414 P.3d 117, 126 (2018) ("[T]he canon of construction expressio unius est exclusio alterius holds that to express or include one thing implies the exclusion of the other, or of the alternative.") (italics and quotation omitted); Goran Pleho, LLC v. Lacy, 144 Hawai'i 224, 251, 439 P.3d 176, 203 (2019) ("This court may not take it upon itself to add an additional exception that the legislature has declined to adopt.").

Oki argues that the legislature repealed the use of a computer charge offenses "to prevent unduly harsh separate charges" and therefore upholding his convictions would undermine the legislature's intent. Similarly, the dissent states, "[i]t

27

is difficult to understand why we would say the legislature did not intend to give a defendant the benefit of the more humane sentence." But the legislature knew how to give Oki that benefit, and it specifically chose not to do so. See State v. Cotton, 55 Haw. 148, 151, 516 P.2d 715, 718 (1973) ("[E]nactment of laws is the prerogative of the legislature and it is not for the judiciary to secondguess the legislature or substitute its judgment for that of the legislature."); see also Shibuya v. Architects Hawaii Ltd., 65 Haw. 26, 41, 647 P.2d 276, 286 (1982) ("[A] court should not substitute its view of wise or fair legislative policy for that of the duly elected representatives of the people.") (quotation omitted).

The dissent attempts to distinguish Reis on the basis that "it addressed a statute that reduced penalties, not one that repealed a crime." (Emphases omitted.) But the dissent does not explain why that distinction should matter. To the contrary, our reasoning in Reis still applies: "an unambiguous term can[not] be rendered ambiguous merely because the statutory provision urged as applicable by the defendant is ameliorative." 115 Hawai'i at 88, 165 P.3d at 989.

Moreover, Reis's policy rationale applies with equal force here. See State v. Stocker, 90 Hawai'i 85, 95, 976 P.2d 399, 409 (1999) ("[A] court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic

28

require it.")  We explained in Reis that our interpretation of "proceedings" and "incurred" accorded with a consistent application of the terms across a variety of statutes, and preserved the constitutionality of the statute as a whole:

> To interpret "proceedings" to mean any discrete hearing pertaining to sentencing, motions for reconsideration, or appellate review would, in practice, mean that the savings clause would not operate to exclude a defendant's case unless all stages of a prosecution and all appeals were entirely concluded prior to the effective date of an amendment. Such a construction would vitiate the very reason for enacting a savings clause, to wit, (1) to delineate clearly which defendants fall under the new statute, in order to avoid producing inconsistent and unjust outcomes among defendants arising from the vagaries of the scheduling process, and (2) to avoid rendering portions of an act—Act 44 in the present matter - potentially unconstitutional as ex post facto measures. To construe penalties as having been "incurred" only at the moment of the imposition of sentence would similarly generate risks of inconsistency and constitutional infirmity.

Reis, 115 Hawai'i at 93, 165 P.3d at 994.

The dissent contends that the rule of lenity applies because "proceedings" is ambiguous.  Respectfully, the Reis majority considered similar arguments at length and rejected the position the dissent advances again today.  Reis's analysis remains valid, and has informed the subsequent actions of the legislature, including the legislature that adopted Act 231.  It should not be set aside, even in a limited instance, without compelling justification, which does not exist here.  See State v. Garcia, 96 Hawai'i 200, 206, 29 P.3d 919, 925 (2001) (noting that a court should "not depart from the doctrine of stare decisis without some compelling justification," and further

29

observing that "considerations of stare decisis have special force in the area of statutory interpretation.") (citations, brackets, and emphasis omitted).

Reis therefore controls in this case.  While the outcome is harsh for Oki, following the settled precedent of this court ensures stability and reliability in our legal system.  Id. ("Adherence to the principle of stare decisis has added force when the legislature, in the public sphere, and citizens, in the private realm, have acted in reliance on a previous decision, for in this instance overruling the decision would dislodge settled rights and expectations or require an extensive legislative response.") (brackets and quotation omitted).

**B.   Waiver Versus Forfeiture and Plain Error Review of the Time and Manner of Restitution Payment**

Second, we turn to Oki's request that this court clarify the difference between waiver and forfeiture.  Regarding Oki's contention that the circuit court erroneously failed to consider his financial ability to make restitution for the purpose of establishing the time and manner of payment as required by HRS § 706-646(3), the ICA concluded, "Oki failed to raise this issue in his first appeal, and he does not state where in the record he raised it on remand; the issue is therefore waived."  (Citing Hawai'i Rules of Appellate Procedure

(HRAP) Rule 28(b)(4); State v. Moses, 102 Hawai'i 449, 456, 77 P.3d 940, 947 (2003); State v. Hoglund, 71 Haw. 147, 150, 785 P.2d 1311, 1313.)

Although the terms waiver and forfeiture are often used interchangeably, they are distinct concepts. See generally Noah J. Gordon & Kristina E. Music Biro, Nat'l Legal Rsch. Grp., 28 Am. Jur. 2d Estoppel and Waiver § 184 (2024). Forfeiture is a "failure to make a timely assertion of a right," whereas waiver is "the intentional relinquishment or abandonment of a known right." Id. (footnote omitted); see also, e.g., United States v. Pembrook, 79 F.4th 720, 724 n.1 (6th Cir. 2023). This court has not addressed the distinction between waiver and forfeiture, although several cases have acknowledged it. See State v. Timoteo, 87 Hawai'i 108, 119, 952 P.2d 865, 876 (1997) (Ramil, J., dissenting) ("Strictly speaking, 'waiver' is the intentional relinquishment or abandonment of a known right. However, waiver is different from forfeiture. 'Forfeiture' should be defined as the automatic and unintentional loss of a right, such as that resulting from the failure to make the timely assertion of a right." (quotations, citations, and brackets omitted)); State v. Lui, No. SCWC-11-0000081, 2013 WL 693008, at *6 n.1 (order denying certiorari) (Pollack, J., dissenting) ("'Forfeiture' is distinct from the concept of 'waiver[.]'"); State v. Nichols, 111 Hawai'i 436, 443, 142 P.3d

300, 307 (App. 2005), vacated on other grounds, 111 Hawai'i 327, 141 P.3d 974 (2006) ("Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.' . . . Mere forfeiture, as opposed to waiver, does not extinguish an 'error' under Rule 52(b).") (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).

Hawai'i court rules, as well as some of our opinions, appear to use the terms interchangeably. HRAP Rule 28(b)(7) (eff. 2022), for example, provides that "points not argued may be deemed waived." But the plain language of HRPP Rule 52(b) permits the appellate court to notice plain error, even if a point is not argued. See HRPP Rule 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). Oki asserts the circuit court plainly erred in setting the time and manner of restitution because it failed to consider his financial ability to make restitution pursuant to HRS § 706-646(3). HRS § 706-646(3) provided and provides in relevant part,

> In ordering restitution, the court shall not consider the defendant's financial ability to make restitution in determining the amount of restitution to order. The court, however, shall consider the defendant's financial ability to make restitution for the purpose of establishing the time and manner of payment. The court shall specify the time and manner in which restitution is to be paid. While the defendant is in the custody of the department of

32

> corrections and rehabilitation, restitution shall be
> collected pursuant to chapter 353 and any court-ordered
> payment schedule shall be suspended.

(Emphasis added.)

The circuit court did, however, consider Oki's financial ability to make restitution. The circuit court explained it had considered Oki's "income earning ability, as reflected in this case but also in the presentence report," as well as the adverse impact of Oki's conviction on such ability. The circuit court ordered Oki to pay restitution "as provided by law while Mr. Oki is incarcerated and thereafter at a rate – at the bare minimum it would need to be $30 a month." The circuit court continued, "at this point I don't have, I believe, sufficient information to know what would be reasonable beyond that $30 a month." It left open the possibility of revisiting the time and manner of payment in the future, depending on Oki's future ability to earn.

Because the circuit court expressly considered Oki's income earning ability, it complied with the requirements of HRS § 706-646(3). The circuit court thus did not err in setting the time and manner of restitution payments.

C. **Revisiting the Restitution Amount on Remand**

Finally, Oki argues the ICA erred in holding that its "remand mandate from Oki's first appeal precluded the circuit

33

court from conducting a new restitution study on remand or otherwise revisiting the amount of restitution."

Here, the ICA pointed out that its Oki I memorandum opinion expressly noted that neither party had challenged the total amount of restitution, but merely the manner in which the restitution should be distributed; the ICA had directed the circuit court on remand "to order restitution directly to Spire" but affirmed the judgment "in all other respects."  The ICA concluded that on remand, the circuit court closely adhered to "the true intent and meaning" of its Oki I mandate.  (Quoting In re HELCO, 149 Hawai'i at 241, 487 P.3d at 710.)

Oki misapprehends the ICA's holding.  The ICA did not hold its remand mandate "precluded" the circuit court from revisiting restitution; rather, it held the circuit court "did not err in ordering restitution to Spire without another restitution hearing and a restitution study."  The ICA was correct.

At a hearing on the State's motion for restitution in Oki's first appeal, the circuit court concluded that the amount of restitution should be the $440,178.54 in proven losses; it then discussed in depth to whom that restitution should be ordered (the former partners in their capacity as partners or the firm).  During Oki's first appeal, the ICA remanded with a directive to the circuit court "to order restitution directly to

34

Spire." Oki, 2020 WL 6115119, at *25. The ICA's memorandum opinion also had noted that "neither party expressly challenges the $440,158.54 total amount of restitution ordered by the circuit court. The parties instead dispute the manner in which the restitution should be collected/distributed." Id. at *22. Then, on remand, the circuit court declined to order a new restitution hearing or study and entered a judgment and restitution order with restitution to be paid to Spire. HRS § 706-646(2) allows for restitution of a victim's losses that are (1) reasonable; (2) verified; (3) suffered as a result of the defendant's conduct; and (4) requested by the victim. Demello, 136 Hawai'i at 196, 361 P.3d at 423; see also Borge, 152 Hawai'i at 467, 526 P.3d at 444.

"On remand, a trial court must closely adhere to the true intent and meaning of the appellate court's mandate." In re HELCO, 149 Hawai'i at 241, 487 P.3d at 710 (citing State v. Lincoln, 72 Haw. 480, 485, 825 P.2d 64, 68 (1992)).

Here, the circuit court closely adhered to the true intent and meaning of the ICA's memorandum opinion when it entered an amended order changing the recipient of the restitution but nothing else. The circuit court had already held restitution hearings and taken evidence on Spire's "reasonable and verified losses." See HRS § 706-646(2). We therefore agree with the ICA that the circuit court did not err

35

in denying Oki's motion for restitution hearing and study when it entered the amended restitution order.

### III. CONCLUSION

Based on the reasoning above, we affirm the ICA's October 24, 2023 judgment on appeal.

DATED:  Honolulu, Hawai'i, May 20, 2024.

James S. Tabe,
Taryn R. Tomasa,
for petitioner/
defendant-appellant

Steven S. Alm,
Brian R. Vincent,
for respondent/
plaintiff-appellee

/s/ Mark E. Recktenwald

/s/ Jeannette H. Castagnetti

/s/ Gary W.B. Chang

